UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DEANNA WALTERS,

        Plaintiff,

      v.

FIDELITY MORTGAGE OF
CALIFORNIA, INC.; CAL-WESTERN
RECONVEYANCE CORP.; MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.; JAMES YORK;
OCWEN LOAN SERVICING, LLC;
J.P. MORGAN CHASE & CO.; J.P.
MORGAN CHASE BANK, N.A.; AND
DOES 1 THROUGH 50, INCLUSIVE,

        Defendants.
_____/

Civ. No. 2:09-cv-3317 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the motion of defendants
Mortgage Electronic Registration Systems, Inc. ("MERS") and Ocwen
Loan Servicing, LLC ("Ocwen") (collectively "defendants") to
dismiss plaintiff Deana Walters's ("plaintiff") first amended
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
/////

1

Plaintiff opposes the motion.  For the reasons set forth below,[1]
defendants' motion to dismiss is GRANTED in part and DENIED in
part.

**BACKGROUND**

Plaintiff's claims are all based upon activities relating to
a residential mortgage loan transaction.  (Pl.'s First Am. Compl.
("FAC"), filed Oct. 28, 2009, ¶ 10.)  On October 22, 2004,
plaintiff obtained a loan in the amount of $159,000 from Fidelity
Mortgage of California, Inc. ("Fidelity") on property located at
3602 Portage Circle South, Stockton, California ("the property").
(Id. ¶¶ 10, 11.)  The loan was evidenced by a written promissory
note and secured by a deed of trust, which named Cal-Western as
trustee and MERS as beneficiary and as nominee for Fidelity.
(Id. ¶ 11.)  Around November 3, 2004, the servicing rights to
plaintiff's loan were transferred to Ocwen.[2]  (Id. ¶ 12.)

Plaintiff alleges that upon acquiring the loan, Ocwen began
to engage in a pattern of unlawful and fraudulent conduct.  (Id.
¶ 14.)  Plaintiff claims, *inter alia*, that Ocwen (1) failed to
credit and misapplied timely payments, (2) failed to provide
timely or clear payment information, (3) prematurely referred
plaintiff's loan to collections, (4) increased monthly payment
amounts and added costs, fees, and interest charges in violation
of the terms of the original mortgage note, and (5) inaccurately

_____

[1]   Because oral argument will not be of material
assistance, the court orders these matters submitted on the
briefs. E.D. Cal. L.R. 230(g).

[2]   Plaintiff also alleges that J.P. Morgan and Chase Bank
acquired some of the ownership and/or servicing rights for the
loan at some point prior to February 13, 2006.  (FAC ¶ 13.)

2

claimed plaintiff was in default and threatened foreclosure when plaintiff was not in default. (Id.)  Plaintiff further alleges that throughout the life of the loan, she repeatedly contacted Ocwen to complain about the errors in her loan accounting and attempted to work with Ocwen to correct the errors. (Id. ¶ 18.)  Ocwen's response to plaintiff's attempts, however, was to "threaten foreclosure pending investigation into the details of the accounting errors and mistakes." (Id.)

In March 2007, Ocwen demanded that plaintiff enter into a "forbearance agreement" with Ocwen in order to avoid foreclosure, pending Ocwen's investigation into the mistakes plaintiff reported. (Id. ¶ 19.)  Plaintiff agreed to the arrangement and made several payments. (Id.)  However, beginning in December 2008, Ocwen claimed that the forbearance agreement had expired, and Ocwen refused to accept payments until a loan modification was processed. (Id. ¶ 20.)  When plaintiff explained that she did not want a loan modification, Ocwen insisted that no payments would be applied to plaintiff's loan balance unless she agreed to a loan modification. (Id.)  As a result, plaintiff provided Ocwen with information relating to a loan modification. (Id.)

Plaintiff repeatedly called Ocwen to try to determine the status of her loan modification and to process her December 2008 payment, but Ocwen refused to process any payments or provide plaintiff with information. (Id. ¶ 21.)  In January 2009, plaintiff again contacted Ocwen to obtain a payoff amount in order to cure Ocwen's claim that plaintiff had defaulted on her loan. (Id. ¶ 22.)  Plaintiff spoke to an Ocwen representative /////

3

1   who agreed to process a request for a "reinstatement quote" in

2   the amount of $8,258.60.  (<u>Id.</u>)

3        When plaintiff contacted Ocwen to obtain the status of her

4   modification agreement on January 6, 2009, Ocwen told plaintiff

5   that her property was scheduled to be sold at foreclosure on

6   January 15, 2009.  (<u>Id.</u> ¶ 23.)  Between January 6 and January 14,

7   2009, plaintiff contacted Ocwen several times to make a payment,

8   but Ocwen declined her attempts "pending completion of the loan

9   modification."  (<u>Id.</u> ¶ 25.)  On January 14, 2009, plaintiff spoke

10  with an Ocwen representative named Evelyn, who informed plaintiff

11  that her loan would be cured and the foreclosure sale would not

12  proceed if plaintiff agreed to transmit the amount on the

13  "reinstatement quote" to Ocwen.  (<u>Id.</u> ¶ 26.)  Plaintiff

14  immediately ordered the wire transfer of $8,258.60 to J.P.

15  Morgan, as provided for by the written agreement, and confirmed

16  placement of the wire transfer with Ocwen by fax on the same day.

17  (<u>Id.</u> ¶ 27.)

18       On January 16, 2009, Ocwen sent plaintiff a loan payoff

19  quote that included a breakdown of the payoff funds with an

20  expiration date of January 26, 2009.  (<u>Id.</u> ¶ 29.)  Plaintiff

21  understood this payoff quote to be confirmation that a

22  foreclosure sale did not take place.  (<u>Id.</u>)  However, Cal-Western

23  had conducted a trustee's sale on January 15, and title to the

24  property was transferred to defendant James York ("York") on

25  January 17, 2009.

26  /////

27  /////

28  /////

4

1    Around January 30, 2009, plaintiff received a three day

2    notice to quit from York.[3]  Thereafter, around January 31, Evelyn

3    informed plaintiff that Ocwen had received plaintiff's wire

4    transfer but that the house was sold in foreclosure because the

5    money had not been received "in time."  (Id. ¶ 34.)  Evelyn told

6    plaintiff that she (Evelyn) had contacted York and advised him

7    that the sale was a mistake, but that York refused Ocwen's

8    request to rescind the sale.  (Id. ¶ 34.)  When plaintiff

9    contacted York directly and asked him to rescind the sale, York

10   claimed he told Ocwen that he would agree to rescind upon receipt

11   of proof from Ocwen that plaintiff made the January 14 wire

12   payment.  (Id. ¶ 35.)  York claimed, however, that Ocwen never

13   sent him proof.[4]  (Id.)

14        On May 29, 2009, plaintiff filed this action against

15   defendants MERS, Ocwen, Fidelity, Cal-Western Reconveyance Corp.

16   ("Cal-Western"), and York, in the California Superior Court, San

17   Joaquin County.  (Docket No. 1.)  On October 28, 2009, plaintiff

18   filed her first amended complaint, adding defendants J.P. Morgan

19   Chase & Co. ("J.P. Morgan") and J.P. Morgan Chase Bank, N.A.

20   ("Chase Bank"), and alleging causes of action for (1)

21

22        [3]   Plaintiff's FAC alleges that she received the notice to
     quite from Coral Park Mortgage, which plaintiff claims is a shell
23   corporation used by defendant York "to avoid tax withholding
     obligations in real estate transactions."  (FAC ¶ 33.)

24        [4]   York subsequently filed an unlawful detainer complaint
     against plaintiff on February 9, 2009, claiming title and the
25   right to possession under the trustee's deed.  (Id. ¶ 37.)
     Subsequent to the filing of the action and prior to removal,
26   plaintiff and York entered into a stipulation whereby plaintiff
     has deposited $13,500 into a trust account to cover the fair
27   rental value of the property from February 15, 2009, through the
     course of this litigation.  (Pl.'s Opp'n, filed Feb. 26, 2010, at
28   6 n.16.)

                                    5

cancellation of trustees deed, (2) quiet title, (3) injunctive relief, (4) breach of contract, (5) civil conspiracy, (6) fraud, (7) violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), (8) breach of fiduciary duty, (9) negligence, (10) violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), (11) unjust enrichment, and (12) fraudulent business practices.  (<u>Id.</u>)  Defendants MERS and Ocwen removed the FAC to this court on November 27, 2009, on the basis of federal question jurisdiction, 28 U.S.C. § 1331.[5]  (<u>Id.</u>)

**STANDARDS**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).

---

[5]   Defendants also move to strike plaintiff's claims for punitive damages on the ground that the FAC fails to plead sufficient facts to warrant the award of such damages.  (Motion to Strike, filed Dec. 10, 2009, at 1:10-25.)  Specifically, defendants contend that plaintiff has not sufficiently alleged facts to support plaintiff's civil conspiracy and fraud claims.  (<u>Id.</u>)  Because, as set forth *infra*, the court grants defendants' motion to dismiss plaintiff's civil conspiracy and fraud claims, defendants' motion to strike is DENIED as moot.

1    On a motion to dismiss, the factual allegations of the
2   complaint must be accepted as true.  Cruz v. Beto, 405 U.S. 319,
3   322 (1972).  The court is bound to give plaintiff the benefit of
4   every reasonable inference to be drawn from the "well-pleaded"
5   allegations of the complaint.  Retail Clerks Int'l Ass'n v.
6   Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not
7   allege "'specific facts' beyond those necessary to state his
8   claim and the grounds showing entitlement to relief."  Twombly,
9   550 U.S. at 570.  "A claim has facial plausibility when the
10  plaintiff pleads factual content that allows the court to draw
11  the reasonable inference that the defendant is liable for the
12  misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

13   Nevertheless, the court "need not assume the truth of legal
14  conclusions cast in the form of factual allegations."  United
15  States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
16  Cir. 1986).  While Rule 8(a) does not require detailed factual
17  allegations, "it demands more than an unadorned, the
18  defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at
19  1949.  A pleading is insufficient if it offers mere "labels and
20  conclusions" or "a formulaic recitation of the elements of a
21  cause of action."  Id. at 1950 ("Threadbare recitals of the
22  elements of a cause of action, supported by mere conclusory
23  statements, do not suffice."); Twombly, 550 U.S. at 555.
24  Moreover, it is inappropriate to assume that the plaintiff "can
25  prove facts which it has not alleged or that the defendants have
26  violated the . . . laws in ways that have not been alleged."
27  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
28  of Carpenters, 459 U.S. 519, 526 (1983).

7

1    Ultimately, the court may not dismiss a complaint in which
2    the plaintiff has alleged "enough facts to state a claim to
3    relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949
4    (citing Bell Atl. Corp., 550 U.S. at 570). Only where a
5    plaintiff has failed to "nudge [his or her] claims across the
6    line from conceivable to plausible," is the complaint properly
7    dismissed. Id. at 1952. While the plausibility requirement is
8    not akin to a probability requirement, it demands more than "a
9    sheer possibility that a defendant has acted unlawfully." Id. at
10   1949. This plausibility inquiry is "a context-specific task that
11   requires the reviewing court to draw on its judicial experience
12   and common sense." Id. at 1950.

**ANALYSIS**

**A.   Defendants' Exhibits**

15   In ruling upon a motion to dismiss, the court may consider
16   matters which may be judicially noticed pursuant to Federal Rule
17   of Evidence 201. See Mir, 844 F.2d at 649; Isuzu Motors Ltd., 12
18   F. Supp. 2d at 1042. Rule 201 permits a court to take judicial
19   notice of an adjudicative fact "not subject to reasonable
20   dispute" because the fact is either "(1) generally known within
21   the territorial jurisdiction of the trial court or (2) capable of
22   accurate and ready determination by resort to sources whose
23   accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).
24   The court can take judicial notice of matters of public record,
25   such as pleadings in another action and records and reports of
26   administrative bodies. See Emrich v. Touche Ross & Co., 846 F.2d
27   1190, 1198 (9th Cir. 1988).
28   /////

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." <u>Id.</u>  The policy concern underlying the rule is to prevent plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998).

Several of plaintiff's claims for relief are dependent upon, and plaintiff's complaint repeatedly refers to, information contained in the deed of trust (RFJN, Ex. 1) and the assignment of the deed of trust (RFJN, Ex. 5).  (<u>See</u> FAC ¶¶ 11-13.)  Because the deed of trust and the assignment of the deed of trust form the basis of several of plaintiff's causes of action, the court takes judicial notice of both documents.[6]  Accordingly, the court will treat exhibits 1 and 5 as part of the complaint and assume that their contents are true for purposes of the motions to dismiss.  <u>Ritchie</u>, 342 F.3d at 908.

/////

---

[6]     Plaintiff objects to defendants' RFJN (Docket No.14), which seeks judicial notice of various other documents in addition to the deed of trust and the assignment of the deed of trust.  (Docket No. 8.)  Because the court addresses plaintiff's causes of action without the additional documents in defendants' RFJN, plaintiff's objections to the remaining documents in the RFJN are overruled.

**B.  Cancellation of Trustee's Deed**

Plaintiff's first cause of action seeks to cancel the trustee's deed upon sale on the grounds that plaintiff "satisfied the written payoff demand of Ocwen in time to avoid the foreclosure sale." (FAC ¶ 39.)  Defendants argue that plaintiff (1) failed to tender the amount of indebtedness to defendants, and (2) failed to allege facts entitling her to cancel the trustee's deed.

Under California Civil Code § 3412, "a written instrument in respect to which there is reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or cancelled."  Cal. Civ. Code § 3412.  "To 'cancel' a contract means to abrogate so much of it as remains unperformed.  It differs from 'rescission,' which means to restore the parties to their former position.  The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made."  <u>Phleger v. Countrywide Home Loans, Inc.</u>, No. C 07-01686, 2009 WL 537189, at *15 (N.D. Cal. Mar. 3, 2009) (quoting <u>Young v. Flickinger</u>, 75 Cal. App. 171, 174 (1925)).  "The court's cancellation powers arise in equity, and are much broader than those which apply to rescission."  <u>Id.</u> (quoting <u>Boyd v. Lancaster</u>, 56 Cal. App. 2d 103, 110 (1942)).

When a trustor and beneficiary enter into an agreement to cure a trustor's home loan default, and the trustor performs in accordance with the agreement, the beneficiary may not exercise the power of sale.  <u>Bank of America v. La Jolla Group II</u>, 129

10

Cal. App. 4th 706, 712 (2005).   In <u>Bank of America v. La Jolla</u>
<u>Group II</u>, the California Court of Appeal considered whether it
was proper (1) to cancel a nonjudicial foreclosure sale based on
the homeowner's agreement with the mortgagor to cure a default on
the loan secured by a deed of trust, and (2) to reinstate the
loan prior to the sale.   <u>Id.</u>   After the homeowner missed several
payments on the loan, the homeowner and lender entered into an
agreement to cure the homeowner's default and reinstate the loan.
<u>Id.</u> at 709.   Although the homeowner procured the payment in
accordance with the agreement, the lender did not inform the
trustee of the agreement, and the homeowner's property was sold
to a third party.   <u>Id.</u>   In finding the foreclosure sale invalid,
the court stated that "no contractual basis remain[ed] for
exercising the power of sale" because the "trustor and
beneficiary entered into an agreement to cure the default and
reinstate the loan" after the homeowner's default.   <u>Id.</u> at 712.
Therefore, in light of the agreement to cure the default, the
beneficiary "had no right to sell" the property.   <u>Id.</u>

    In the present case, Plaintiff alleges she entered into an
agreement with Ocwen — the reinstatement quote — to cure her
alleged default.   Specifically, plaintiff contends that her wire
transfer of $8,258.60 to defendant J.P. Morgan on January 14,
2009, satisfied the conditions of Ocwen's reinstatement quote.
(FAC ¶¶ 26-28.)   Plaintiff alleges that by wiring the money she
"cured any default in accordance with Ocwen's instructions," and
thus, like the beneficiary in <u>La Jolla II</u>, Ocwen had no right to
exercise the power of sale.   Construing the allegations in the
light most favorable to plaintiff, it is plausible to infer that

11

plaintiff timely wired the money to Ocwen in accordance with the reinstatement quote and the directions of Ocwen employees. Therefore, plaintiff has sufficiently pled that Ocwen had no contractual basis to exercise the power of sale.  See La Jolla II, 129 Cal. Appl. 4th at 712.

Ocwen argues La Jolla II is inapplicable because there the borrower tendered a reinstatement payment to the beneficiary four days prior to the sale — and in the present case it is disputed as to whether plaintiff actually timely provided the payment to Ocwen in accordance with the reinstatement quote.  (Defs.' Reply, filed Mar. 5, 2010, 2:19-21.)  However, under the notice pleading standard in federal court, plaintiff sufficiently alleges that her actions satisfied her responsibility under the agreement to cure the default.  See La Jolla II, 129 Cal. App. 4th at 712.

Accordingly, defendants' motion to dismiss plaintiff's cause of action for cancellation of trustee's deed is DENIED.

**C.   Quiet Title**

Plaintiff's second cause of action seeks to quiet title against the claims of all defendants to this action pursuant to Cal. Code Civ. Proc. §§ 760.010-764.080.  (FAC ¶¶ 46-51.) Plaintiff claims that defendants have "no right to title, estate, lien, or interest" in the property in question.  (FAC ¶ 50.) Ocwen and MERS argue, *inter alia*, that they are not proper parties to the claim.  (MTD 5:16-19.)

The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to."  Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970)

(citation omitted); see Garcia v. Wachovia Mortgage Corp., No. 2:09-cv-03925, 2009 WL 3837621, at *14 (C.D. Cal. Oct. 14, 2009). A plaintiff may bring a quiet title claim "to establish title against adverse claims to real or personal property or any interest therein." Cal. Code Civ. Proc. § 760.010. In order to state a valid claim under § 761.020, "a complaint must be verified and include (1) a legal description of the property and its street address or common designation, (2) the title of the plaintiff and the basis of the title, (3) the adverse claims to the title of the plaintiff, (4) the date as of which the determination is sought, and (5) a prayer for the determination of the title of the plaintiff against the adverse claims." Sanchez v. Greenpoint Mortgage Funding, Inc., No. 09 CV 2005, 2010 WL 760613, at *2 (S.D. Cal. Mar. 4, 2010).

In the present case, any responsibility Ocwen has as a loan servicer does not amount to an adverse claim to title. Bunag v. Aegis Wholesale Corp., No. C 09-00558, 2009 WL 2245688, at *5 (N.D. Cal. July 27, 2009); Cleveland v. Deutsche Bank Nat'l Trust Co., No. 08cv0802, 2009 WL 250017, at *5 (S.D. Cal. Feb. 2, 2009). Therefore, without an adverse claim to title, Ocwen is not a proper party to the claim.

MERS, similarly, is not a proper party to the quiet title claim because it was designated merely as a nominee for defendant Fidelity. (RFJN, Ex. 1.) In this capacity, MERS was essentially an agent for Fidelity, the nominating party. Moreover, as the assignment of deed of trust makes clear, MERS assigned all of Fidelity's interest under the deed of trust and the accompanying note to HSBC Bank USA, N.A. — the assignee beneficiary — on

13

November 27, 2006.  Therefore, MERS never had an independent

claim to the property, and it is no longer involved in the

transaction at issue.  Without an interest in the property, MERS

has no adverse claim to title, and is thus an improper party for

this cause of action.

In her opposition, plaintiff asks leave to amend her FAC if

defendants' motion to dismiss is granted.  While leave to amend

should be freely given pursuant to Federal Rule of Civil

Procedure 15, the court is not required to allow *futile*

amendments.  <u>Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.</u>

<u>Bureau</u>, 701 F.2d 1276, 1293 (9th Cir. 1983).  Here, amendment of

the complaint with respect to plaintiff's quiet title claim would

be futile under the governing law described above, and plaintiff

does not provide any other facts which could plausibly give rise

to such a claim against either Ocwen or MERS.  <u>See</u> <u>Iqbal</u>, 129 S.

Ct. at 1949.

Accordingly, defendants Ocwen and MERS' motion to dismiss

plaintiff's cause of action for quiet title is GRANTED without

leave to amend.

**D.   Breach of Contract**

Plaintiff's third cause of action alleges that Ocwen

breached the terms of the promissory note, which plaintiff

attached to her FAC as Exhibit A.  (FAC ¶¶ 56-59.)  Ocwen argues

that the claim fails as a matter of law because Ocwen is not a

party to the promissory note.  (MTD 7:18-20.)

A cause of action for breach of contract must include facts

demonstrating (1) that a contract exists between the parties, (2)

that the plaintiff performed his contractual duties or was

14

1  excused from nonperformance, (3) that the defendant breached

2  those contractual duties, and (4) that plaintiff's damages were a

3  result of the breach.  Reichert v. Gen. Ins. Co., 68 Cal. 2d 822,

4  830 (1968); First Commercial Mortgage Co. v. Reece, 89 Cal. App.

5  4th 731, 745 (2001).

6      Plaintiff's allegations fail to identify a contract between

7  plaintiff and Ocwen.  Plaintiff's FAC alleges that Ocwen breached

8  the terms contained in the promissory note.  However, the only

9  parties to the promissory note are plaintiff and defendant

10  Fidelity, not Ocwen.  (FAC, Ex. A.)  Plaintiff's opposition

11  points to "other agreements between Ocwen" and plaintiff that

12  "establish a contractual relationship" (Opp'n 10:23-24), but

13  these allegations are outside the scope of the facts pled in

14  plaintiff's FAC.  Because the note demonstrates that a

15  contractual relationship only existed between plaintiff and

16  defendant Fidelity, plaintiff is unable to maintain a breach of

17  contract claim against Ocwen based on the current allegations.

18      Accordingly, defendants' motion to dismiss plaintiff's cause

19  of action for breach of contract is GRANTED with leave to amend.

20  **E.   Civil Conspiracy**

21      Plaintiff's fourth cause of action alleges that Ocwen

22  engaged in a civil conspiracy with defendants York and J.P.

23  Morgan to injure plaintiff by misappropriating her property and

24  engaging in wrongful conduct.  (FAC ¶¶ 60-64.)  Ocwen argues,

25  *inter alia*, that plaintiff's FAC fails to state a claim.  (MTD

26  9:11-12.)

27      "A conspiracy is not an independent cause of action, but 'a

28  legal doctrine that imposes liability on persons who, although

not actually committing a tort themselves, share with the
immediate tortfeasors a common plan or design in its
perpetration.'" <u>Brittain v. IndyMac Bank, FSB</u>, No. C-09-2953,
2009 WL 2997394, at *2 (N.D. Cal. Sep. 16, 2009) (quoting <u>Applied</u>
<u>Equip. Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 510-11
(1994)).  To state a cause of action for conspiracy under
California law, a plaintiff must plead (1) the formation and
operation of the conspiracy, (2) the wrongful act or acts that
result from the alleged conspiracy, and (3) the damage to
plaintiff resulting from such act or acts.  <u>Mertan v. Am. Home</u>
<u>Mortgage Servicing, Inc.</u>, No. SACV 09-723, 2009 WL 3296698, at *5
(C.D. Cal. Oct. 13, 2009) (internal quotation marks omitted)
(citing <u>Schick v. Lerner</u>, 193 Cal. App. 3d 1321, 1327-28 (1987)).

In this case, plaintiff's factual allegations are too
conclusory to state a claim for civil conspiracy.  For example,
plaintiff alleges that defendants Ocwen, York, and J.P. Morgan
"knowingly and willfully conspired" to injure plaintiff, but
plaintiff's FAC fails to allege specifically how defendants
furthered a conspiracy.  Plaintiff suggests a vague connection
between York and Ocwen by alleging that York told plaintiff he
"has many dealings with Ocwen and that he knew from his own
experience that Ocwen has a history and reputation for providing
false, inaccurate and misinformation."  (FAC ¶ 35.)  However,
this allegation alone is insufficient to state a claim for civil
conspiracy; plaintiff makes no mention whatsoever of how
defendants formed or operated a conspiracy among them.  <u>See</u>
<u>Mertan</u>, 2009 WL 3296698, at *5; <u>Brittain</u>, 2009 WL 2997394, at *2.
/////

16

1    Accordingly, defendants' motion to dismiss plaintiff's cause
2  of action for civil conspiracy is GRANTED with leave to amend.
3  **F.    Fraud**
4    Plaintiff's fifth cause of action alleges that Ocwen engaged
5  in fraud by making false and misleading statements to plaintiff
6  regarding the status of her loan.  (FAC ¶¶ 65-77.)  Ocwen claims,
7  *inter alia*, that plaintiff fails to allege fraud with the
8  particularity required by Federal Rule of Civil Procedure 9(b).
9  (MTD 11:7-12:8.)

10    A court may dismiss a claim grounded in fraud when its
11  allegations fail to satisfy Rule 9(b)'s heightened pleading
12  requirements.  <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107
13  (9th Cir. 2003).  As a result, a plaintiff "must state with
14  particularity the circumstances constituting fraud."  Fed. R.
15  Civ. P. 9(b).  In other words, the plaintiff must include "the
16  who, what, when, where, and how" of the fraud.  <u>Id.</u> at 1106
17  (citations omitted).  Further, "[t]he plaintiff must set forth
18  what is false or misleading about a statement, and why it is
19  false."  <u>Decker v. Glenfed, Inc.</u>, 42 F.3d 1541, 1548 (9th Cir.
20  1994).  The purpose of Rule 9(b) is to ensure that defendants
21  accused of the conduct specified have adequate notice of what
22  they are alleged to have done, so that they may defend against
23  the accusations.  <u>Concha v. London</u>, 62 F.3d 1493, 1502 (9th Cir.
24  1995).

25    Furthermore, when asserting a fraud claim against a
26  corporation, a "plaintiff's burden . . . is even greater . . . .
27  The plaintiff must 'allege the names of the persons who made the
28  allegedly fraudulent representations, their authority to speak,

17

to whom they spoke, what they said or wrote, and when it was said or written.'" <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 645 (1996) (quoting <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal. App. 4th 153, 157 (1991)); <u>see also</u> <u>Mohammad Akhavein v. Argent Mortgage Co.</u>, No. 5:09-cv-00634, 2009 U.S. Dist. LEXIS 61796, at *10 (N.D. Cal. July 17, 2009); <u>Edejer v. DHI Mortgage Co.</u>, No. C 09-1302, 2009 U.S. Dist. LEXIS 52900, at *36 (N.D. Cal. June 12, 2009) (dismissing fraud claim where plaintiff did not allege any misrepresentation or false statements made by defendants and failed to allege names of individuals who made fraudulent representations).

Here, plaintiff's FAC fails to meet the heightened pleading requirement of Rule 9(b). Specifically, plaintiff has failed to allege who actually made the supposedly false representations, their ability to speak for the corporation, and the timing of the representation, such that Ocwen has adequate notice of what it is alleged to have done to plaintiff. <u>See</u> <u>Lazar</u>, 12 Cal. 4th at 645; <u>Tarmann</u>, 2 Cal. App. 4th at 157. Without such information, plaintiff's fraud claim must fail as a matter of law.

Accordingly, defendants' motion to dismiss plaintiff's cause of action for fraud is GRANTED with leave to amend.[7]

/////

/////

---

[7]   Plaintiff claims in her opposition that she is "prepared to provide detailed allegations and proof of Defendants' fraudulent representations and conduct" should the court dismiss her fraud claim. (Pl.'s Opp'n 1:9-12.) Plaintiff also attached as Exhibit A to her opposition a document which sets forth additional facts that plaintiff is prepared to plead in a second amended complaint. (<u>Id.</u> Ex. A at 1.)

18

**G.   California's Rosenthal Act**

Plaintiff's sixth cause of action alleges that defendant Ocwen violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788 <u>et seq.</u>, by falsely representing plaintiff's debt and adding unwarranted debt.  (FAC ¶ 77.)  Ocwen argues, *inter alia*, that plaintiff fails to allege RFDCPA violations.  (MTD 15:7-15.)

The purpose of the RFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts."  Cal. Civ. Code § 1788.1(b).  A debt collector violates the act when it engages in harassment, threats, the use of profane language, false simulation of the judicial process, or when it cloaks its true nature as a licensed collection agency in an effort to collect a debt.  <u>See</u> <u>id.</u> §§ 1788.10-.18; <u>see also</u> <u>Hernandez v. Cal. Reconveyance Co.</u>, 2009 U.S. Dist. LEXIS 13936, at *13 (E.D. Cal. Feb. 23, 2009) (holding that RFDCPA claim failed because complaint lacked allegations of harassment or abuse, false or misleading representations of debt collector's identity, or unfair practices during process of collecting debt).  However, the mere allegation that defendants foreclosed on a deed of trust does not implicate the RFDCPA.  <u>See, e.g.</u>, <u>Benham v. Aurora Loan Servs.</u>, No. C-09-2059, 2009 U.S. Dist. LEXIS 78384, at *6 (N.D. Cal. Sept. 1, 2009); <u>Ricon v. Recontrust Co.</u>, No. 09cv937, 2009 U.S. Dist. LEXIS 67807, at *9 (S.D. Cal. Aug. 4, 2009); <u>Hepler v. Wash. Mut. Bank, FA</u>, No. CV 07-4804, 2009 U.S. Dist. LEXIS 33883, at *11 (C.D. Cal. Apr. 17, 2009).

1    In the present case, plaintiff's RFDCPA claim rests solely
2  on plaintiff's allegation that Ocwen "engaged in false
3  representations of [plaintiff's] debt and added unwarranted
4  debt." (FAC ¶ 77.)  However, these bare allegations fail to
5  adequately put Ocwen on notice of the basis for the alleged
6  RFDCPA violation.  For example, plaintiff's FAC does not
7  sufficiently allege how Ocwen falsely represented plaintiff's
8  debt.  Plaintiff also does not allege threats, harassment, or
9  profane language that occurred after the loan was made.  In
10  short, plaintiff's FAC fails to state facts that give rise to a
11  fair inference that Ocwen violated the RFDCPA.  See Larkin v.
12  Select Portfolio Servicing, 1:09-CV-01280, 2009 U.S. Dist. LEXIS
13  97656, at *8 (E.D. Cal. Oct. 21, 2009) (holding that allegations
14  that defendant used "unfair or unconscionable means to collect a
15  debt" are merely conclusions of law when the plaintiff did not
16  allege any facts concerning frequency, timing, or methods of debt
17  collection practices).

18    Accordingly, defendants' motion to dismiss plaintiff's cause
19  of action for violations of RFDCPA is GRANTED with leave to
20  amend.

21  **H.   Breach of Fiduciary Duty**

22    Plaintiff's seventh cause of action alleges that Ocwen
23  breached its fiduciary duty to plaintiff on countless occasions
24  by, *inter alia*, failing to credit plaintiff's payments, failing
25  to provide plaintiff with timely information regarding her loan,
26  and increasing her monthly payment without proper notice. (FAC ¶
27  83.)  Ocwen claims that, as a lending institution, it owes no
28  duty of care to plaintiff. (MTD 16:19-17:21.)

20

In order to sustain a claim for breach of a fiduciary duty, "a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." <u>Serrano v. Sec. Nat'l Mortgage Co.</u>, No. 09-CV-1416, 2009 U.S. Dist. LEXIS 71725, at *12-13 (S.D. Cal. Aug. 14, 2009) (citing <u>Shopoff & Cavallo LLP v. Hyon</u>, 167 Cal. App. 4th 1489 (2008). "Absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." <u>Rangel v. DHI Mortgage Co.</u>, No. CV F 09-1035, 2009 U.S. Dist. LEXIS 65674, at *8 (E.D. Cal. July 20, 2009); <u>see also</u> <u>Tasaranta v. Homecomings Fin.</u>, No. 09-CV-01722, 2009 U.S. Dist. LEXIS 87372, at *15 (S.D. Cal. Sept. 21, 2009); <u>Brittain v. IndyMac Bank, FSB</u>, No. C-09-2953, 2009 U.S. Dist. LEXIS 84863, at *14 (N.D. Cal. Sept. 16, 2009); <u>Dinsmore-Thomas v. Ameriprise Fin., Inc.</u>, No. SACV 08-587, 2009 U.S. Dist. LEXIS 68882, at *29 (C.D. Cal. Aug. 3, 2009); <u>Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Ass'n</u>, 52 Cal. App. 3d 484, 488, 489 (1975); <u>Bradler v. Craig</u>, 274 Cal. App. 2d 466, 473, 476 (1969).

Plaintiff's claim for breach of fiduciary duty fails because plaintiff has not alleged any facts creating a special circumstance where Ocwen, as lender, owed a fiduciary duty to plaintiff. Plaintiff's allegation that Ocwen "bore a contractual duty to plaintiff" ostensibly refers to the borrower-lender relationship between plaintiff and Ocwen. Under California law, this is not the type of relationship that creates a fiduciary duty. <u>See, e.g.</u>, <u>Rangel</u>, 2009 U.S. Dist. LEXIS 65674, at *8. Moreover, because plaintiff did not allege that Ocwen's relationship with plaintiff exceeded the scope of its

conventional role as "a mere lender of money," <u>Nymark v. Hart
Fed. Sav. & Loan Assoc.</u>, 231 Cal. App. 3d 1089, 1096 (1991),
plaintiff cannot allege that Ocwen owed her a duty of care.

Accordingly, Ocwen's motion to dismiss plaintiff's cause of
action for breach of fiduciary duty is GRANTED with leave to
amend.

**I.   Negligence**

Plaintiff's eighth cause of action alleges that Ocwen
breached various duties owed to plaintiff, including "the
accurate and timely accounting and reporting of her debt
payments, and the accurate and timely communication to
[plaintiff] and various credit reporting agencies of the nature
and amount of her debt." (FAC ¶ 87.) Ocwen argues, *inter alia*,
that it owes no tort duty of care to plaintiff as a matter of
law. (MTD 16:19-17:21.)

Under California law, the elements of a claim for negligence
are "(a) a legal duty to use due care; (b) a breach of such legal
duty; and (c) the breach as the proximate or legal cause of the
resulting injury." <u>Ladd v. County of San Mateo</u>, 12 Cal. 4th 913,
917 (1996) (internal citations omitted); <u>see also</u> Cal. Civ. Code
§ 1714(a). "[A]s a general rule, a financial institution owes no
duty of care to a borrower when the institution's involvement in
the loan transaction does not exceed the scope of its
conventional role as a mere lender of money . . . ." <u>Nymark</u>, 231
Cal. App. 3d at 1095.

As with plaintiff's breach of fiduciary duty claim,
plaintiff has not alleged facts that would suggest Ocwen's
actions exceeded its conventional role as a mere lender of money.

As Ocwen points out, plaintiff's allegations "relate solely to the servicing of Plaintiff's loan" (MTD 18:15-16), and Ocwen did not actively participate in plaintiff's financed enterprise "beyond the domain of the usual money lender." <u>Nymark</u>, 231 Cal. App. 3d at 1093 n.5.  Because plaintiff has not alleged that Ocwen had a duty independent of the lender-borrower relationship, she has failed to state facts sufficient to support a claim of negligence.

Accordingly, Ocwen's motion to dismiss plaintiff's cause of action for negligence is GRANTED with leave to amend.

**J.   RICO Violation**

Plaintiff's ninth cause of action alleges that Ocwen violated the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d).  (FAC ¶ 92.)  Plaintiff claims that Ocwen engaged in a pattern of racketeering activity — specifically mail fraud, wire fraud, and violations of the Fair Debt Collection Practices Act — for the purpose of defrauding plaintiff of money.  (<u>Id.</u> ¶ 96.)  Ocwen argues, *inter alia*, that plaintiff's FAC fails to state a claim for RICO.  (MTD 20:17-21:16.)

18 U.S.C. § 1962(c) states:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c).  In order to state a claim for violation of RICO, a plaintiff must plead "(1) conduct (2) of an enterprise

/////

1 (3) through a pattern (4) of racketeering activity."  <u>Sedima,</u>

2 <u>S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

3      An "enterprise" consists of an independent legal entity such

4 as a corporation or an "association in fact" of individuals.  18

5 U.S.C. § 1961(4); <u>Izenberg v. ETS Servs., LLC</u>, 589 F. Supp. 2d

6 1193, 1201 (C.D. Cal. Dec. 8, 2008).  The commission of at least

7 two acts of "racketeering activity" within a ten year period

8 constitutes a "pattern."  18 U.S.C. § 1961(5).  "Section 1961(5)

9 concerns only the minimum number of predicates necessary to

10 establish a pattern; and it assumes that there is something to a

11 RICO pattern *beyond* simply the number of predicate acts

12 involved."  <u>H.J., Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 237,

13 238 (1989).  In other words, "a plaintiff or prosecutor must show

14 that the racketeering predicates are related, and that they

15 amount to or pose a threat of continued criminal activity."  <u>Id.</u>

16 Racketeering activity is any act indictable under the provisions

17 of 18 U.S.C. § 1961, including mail and wire fraud.  18 U.S.C. §§

18 1341, 1343; <u>Izenberg</u>, 589 F. Supp. 2d at 1201 (citing <u>Forsyth v.</u>

19 <u>Humana, Inc.</u>, 114 F.3d 1467, 1481 (9th Cir. 1997)).  A "plaintiff

20 only has standing if, and can only recover to the extent that, he

21 has been injured in his business or property by the conduct

22 constituting the violation."  <u>Sedima</u>, 473 U.S. at 496.

23      Plaintiff fails to state a claim for violation of RICO.

24 Plaintiff alleges that Ocwen's business practices "were

25 continuous so as to form a pattern of racketeering activity" (FAC

26 ¶ 98), but plaintiff's allegations fail to set forth any facts

27 demonstrating such a pattern.  Specifically, plaintiff fails to

28 allege a sufficient connection between Ocwen's alleged acts of

wrongdoing, and does not suggest how or why such behavior is "Ocwen's regular way of conducting business."  See H.J., Inc., 492 U.S. at 239 (noting that a pattern is not formed by "sporadic activity" on the part of the defendant).

Moreover, the racketeering activity plaintiff complains of — mail fraud, wire fraud, and FDCPA violations — is not sufficient to put Ocwen on notice as to the nature of plaintiff's claim and the grounds upon which it rests.  See Twombly, 550 U.S. at 555. Plaintiff only alleges that Ocwen engaged in a pattern of racketeering activity, but neither explains how Ocwen engaged in such fraudulent or illegal activity nor how such conduct injured plaintiff.  These conclusory allegations do not meet the requisite notice pleading standard.  See Iqbal, 129 S. Ct. at 1950.

Accordingly, defendants' motion to dismiss plaintiff's cause of action for violation of RICO is GRANTED with leave to amend.

**K.    Unjust Enrichment/Restitution**

Plaintiff's tenth cause of action alleges that Ocwen unjustly benefitted from its alleged illegal behavior, and that Ocwen unjustly retained those benefits at the expense of plaintiff.  (FAC ¶ 80.)  Ocwen argues (1) that California law does not recognize a claim for unjust enrichment, and (2) that plaintiff "failed to allege any facts demonstrating an unjust receipt and retention of the benefit by Ocwen."  (MTD 15:21-16:10.)

Contrary to Ocwen's first argument, California does recognize a claim for restitution.  Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1100 (N.D. Cal. 2006); see Malcolm v.

1  JPMorgan Chase Bank, N.A., No. 09-4496, 2010 WL 934252, at *7

2  (N.D. Cal. Mar. 15, 2010).   In order to establish a cause of

3  action for unjust enrichment, a plaintiff must plead "receipt of

4  a benefit and the unjust retention of the benefit at the expense

5  of another."   Lectrodryer v. Seoulbank, 77 Cal. App. 4th 723, 726

6  (2000).   The plaintiff must demonstrate that the benefit was

7  conferred on the defendant through mistake, fraud, or coercion.

8  Nebbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App.

9  3d 1415, 1422 (1988).

10      Plaintiff's FAC states a valid claim for unjust enrichment.

11  As set forth above, plaintiff sufficiently alleges that despite

12  her compliance with Ocwen's reinstatement quote, Ocwen proceeded

13  with the trustee's sale.   Thus, plaintiff's allegation that Ocwen

14  retained the benefit of selling the property in question at the

15  expense of plaintiff is sufficient to put Ocwen on notice as to

16  the nature of plaintiff's claim and the grounds upon which it

17  rests.   See Twombly, 550 U.S. at 555.

18      Accordingly, defendants' motion to dismiss plaintiff's cause

19  of action for unjust enrichment is DENIED.

20  **L.    Violation Of California Business & Professions Code § 17200**

21      Plaintiff's eleventh cause of action alleges that defendants

22  Ocwen, York, and J.P. Morgan violated section 17200 of the

23  California Business & Professions Code by engaging in fraudulent

24  business practices.   (FAC ¶¶ 72-75.)   Defendants Ocwen and MERS

25  argue, *inter alia*, that plaintiffs fail to state a claim as they

26  merely rely upon conclusory assertions of fraudulent business

27  practices.   (MTD 12:9-13:21.)

28  /////

26

1    The Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
2  §§ 17200 _et seq._, forbids acts of unfair competition, which
3  includes "any unlawful, unfair or fraudulent business act or
4  practice." _Id._ "The UCL is broad in scope, embracing anything
5  that can properly be called a business practice and that at the
6  same time is forbidden by law." People ex rel. Gallegos v. Pac.
7  Lumber Co., 158 Cal. App. 4th 950, 959 (2008) (internal citations
8  omitted).  Section 17200 "'borrows' violations of other laws and
9  treats" them as unlawful business practices "independently
10 actionable under section 17200." Farmers Ins. Exch. v. Superior
11 Court, 2 Cal. 4th 377, 383 (1992).  "Violation of almost any
12 federal, state, or local law may serve as the basis for a[n]
13 [unfair competition] claim." Plascencia v. Lending 1st Mortgage,
14 583 F. Supp. 2d 1090, 1098 (9th Cir. 2008) (citing Suanders v.
15 Superior Court, 27 Cal. App. 4th 832, 838-39 (1994)); see Hauk v.
16 JP Morgan Chase Bank U.S., 552 F.3d 1114 (9th Cir. 2009)
17 ("California's UCL has a broad scope that allows for 'violations
18 of other laws to be treated as unfair competition that is
19 independently actionable' while also 'sweep[ing] within its scope
20 acts and practices not specifically proscribed by any other
21 law.'").

22    Plaintiff's UCL claim rests solely on allegations that Ocwen
23 engaged in fraudulent business practices.  Because plaintiff's
24 claim is predicated on facts supporting her fraud claim, which
25 the court has dismissed, plaintiff is similarly unable to
26 maintain a separate UCL claim.
27 /////
28 /////

1    Accordingly, defendants' motions to dismiss plaintiff's

2   cause of action for violations of California Business &

3   Professions Code § 17200 is GRANTED with leave to amend.

4                            **CONCLUSION**

5    For the foregoing reasons, defendants' motion to dismiss is

6   GRANTED in part and DENIED in part.  Plaintiff is granted fifteen

7   (15) days from the date of this order to file a second amended

8   complaint in accordance with this order.  Defendants are granted

9   thirty (30) days from the date of service of plaintiff's second

10   amended complaint to file a response thereto.

11    IT IS SO ORDERED.

12   DATED: April 14, 2010

13

14   _____

15   FRANK C. DAMRELL, JR.
     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28