UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

DEANNA WALTERS,

        Plaintiff,

    v.

FIDELITY MORTGAGE OF
CALIFORNIA, INC.; CAL-WESTERN
RECONVEYANCE CORP; JAMES YORK;
OCWEN LOAN SERVICING, LLC;
HSBC BANK U.S.A., N.A.; AND
DOES 1 THROUGH 50, INCLUSIVE,

        Defendants.

_____/

Civ. No. S-09-3317 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on motions by defendants
Ocwen Loan Servicing, LLC ("Ocwen") and HSBC Bank U.S.A., N.A.
("HSBC") (collectively, "defendants"), pursuant to Federal Rules
of Civil Procedure 12(b)(6) and 12(f), to dismiss and to strike
certain claims alleged in plaintiff Deanna Walters' ("plaintiff")
second amended complaint ("SAC").  In conjunction with their
motion to dismiss, defendants request that the court take

1

judicial notice of eight exhibits.  Plaintiff opposes defendants'

motions.  For the reasons set forth below,[1] defendants' motion to

dismiss is GRANTED in part and DENIED in part, and their motion

to strike is DENIED.

## BACKGROUND

Plaintiff's claims arise out of conduct related to a

residential mortgage loan transaction.  (SAC, filed May 6, 2010,

¶ 10.)[2]  On or around October 22, 2004, plaintiff obtained a loan

in the amount of $159,000 from Fidelity Mortgage of California,

Inc. ("Fidelity") on property located at 3602 Portage Circle

South, Stockton, California (the "Property").  (Id. ¶¶ 10-12.)

The loan was evidenced by a written promissory note and secured

by a deed of trust, which named Cal-Western ReConveyance Corp.

("Cal-Western") as trustee and Mortgage Electronic Registration

Systems, Inc. ("MERS") as nominee for Fidelity and beneficiary.

(Id. ¶ 11-12.)

After the closing of the loan transaction, the servicing

rights to plaintiff's loan were transferred to Ocwen.  (Id.

¶ 14.)  Plaintiff alleges that Ocwen acted as an agent of

Fidelity, or alternatively, that Ocwen directly assumed by

assignment or transfer all of Fidelity's rights and obligations

under the promissory note and deed of trust.  (Id. ¶ 15.)  From

December 2004 through January 2009, plaintiff dealt only with

Ocwen in connection with the promissory note and deed of trust.

---

[1]     Because oral argument will not be of material
assistance, the court orders these matters submitted on the
briefs. E.D. Cal. L.R. 230(g).

[2]     The facts herein are drawn from the allegations in the
SAC and are deemed to be true for the purposes of this motion.

(<u>Id.</u> ¶ 17.)  Plaintiff asserts that Ocwen acted "on its own behalf, without advising her or suggesting in any way that it was acting as an agent for any other party or entity."  (<u>Id.</u>)

Plaintiff alleges that after Ocwen acquired rights in or began servicing the loan, it began to engage in a pattern of unlawful and fraudulent conduct.  (<u>Id.</u> ¶ 21.)  Plaintiff claims, *inter alia*, that Ocwen (1) failed to credit and misapplied timely payments; (2) failed to provide timely or clear payment information; (3) prematurely referred plaintiff's loan to collections; (4) increased monthly payment amounts and added costs, fees, and interest charges in violation of the terms of the original mortgage note; (5) charged plaintiff's account for hazard insurance for the Property when it was already insured; and (6) inaccurately claimed plaintiff was in default and threatened foreclosure when plaintiff was not in default.  (<u>Id.</u>)

Plaintiff alleges that from January 2005 through January 2009, Ocwen mailed her "monthly statements, reminder notices, past due notices, notices of default and other written communications, as well as communications via the internet and through electronic mail and by telephone that were materially false and misleading and known by Ocwen to be false."  (<u>Id.</u> ¶ 22.)

On December 28, 2004, plaintiff paid a monthly installment on her loan that was due on January 1, 2005, but Ocwen failed to apply the payment correctly and instead applied it to a payment due December 1, 2004 that plaintiff had already paid.  (<u>Id.</u> ¶ 26.)  On or about January 21, 2005, Ocwen sent plaintiff a notice stating that her current payment had not been received and

3

was past due. (Id. ¶ 28.)  Ocwen listed late charges of $77.72
in monthly statements mailed to plaintiff for the months of
January, February, and March 2005, when it knew or should have
known that plaintiff's payments had not been late. (Id.)
Plaintiff states that in "virtually every written monthly account
statement" that Ocwen sent her between 2005 and 2007, Ocwen
falsely claimed that plaintiff owed additional late fees, even
though her payments were not late. (Id. ¶ 38.)

On or around January 1, 2005, Ocwen falsely claimed in a
written notice mailed to plaintiff that it had not received proof
of hazard insurance on the Property, despite the fact that Ocwen
was or should have been aware that the premium for the insurance
had been paid in October 2004. (Id. ¶ 30.)  In a written notice
mailed to plaintiff, dated February 6, 2005, Ocwen stated that it
had procured hazard insurance because, it asserted, plaintiff had
failed to do so. (Id.)  On or around April 18, 2005, Ocwen
charged plaintiff $1,068.00 for the insurance. (Id.)  Ocwen then
reversed the charge on May 5, 2005. (Id.)

In April 2005, Ocwen sent plaintiff a written notice of
default even though all the amounts allegedly outstanding were
the result of charges improperly posted to plaintiff's account.
(Id. ¶ 29.)  Ocwen reflected additional late charges to
plaintiff's account in monthly statements dated June 17, 2005,
July 5, 2005, and August 3, 2005, although plaintiff had not been
late in making her payments. (Id. ¶ 31.)  On August 1, 2005,
plaintiff telephoned Ocwen and spoke to an employee named Mary,
who told plaintiff that the late charges were the result of
errors by the "old" Ocwen and that these errors would be

corrected.  (Id. ¶ 32.)  Despite these assurances, and subsequent
telephone requests by plaintiff in September and October 2005,
the account was not corrected.  (Id. ¶ 33.)

In October 2005, an unidentified Ocwen employee told
plaintiff by telephone that Ocwen would not accept plaintiff's
payments because she was in default.  (Id. ¶ 34.)  On or around
November 29, 2005, plaintiff spoke by telephone to an Ocwen
employee who identified herself as "J. Roberson" and who allowed
plaintiff to make three payments that Ocwen had previously
refused to accept.  (Id.)  Plaintiff made a payment on November
29, 2005.  (Id.)  J. Roberson told plaintiff that the payment
would bring her loan current, including all disputed late
charges.  (Id.)

In January 2006, plaintiff learned that the payment she made
on November 29, 2005 had not been credited, and Ocwen returned
the check for plaintiff's January 2006 payment, falsely claiming
that the check was insufficient.  (Id. ¶ 35.)

On or around February 10, 2006, Ocwen caused Cal-Western to
issue a notice of default and election to sell.  (Id. ¶ 36.)
Plaintiff spoke to an Ocwen representative who told plaintiff
that she needed to pay $7,772.00 to bring her loan current
through March 2006.  (Id. ¶ 37.)  Although plaintiff paid this
amount by wire transfer on February 22, 2006, she received a
reinstatement quote dated February 28, 2006, falsely stating that
she owed additional money.  (Id.)

In June 2006, plaintiff was falsely informed that she owed a
monthly payment of $1,660.29, when the actual amount owed was
$1,295.00.  (Id. ¶ 39.)  Plaintiff paid $1,660.29 in the

expectation that she would receive a credit toward the following month's payment. (Id.)  In or around June 2006, plaintiff's on-line account statement reflected that her next payment due would be in the amount of $807.50, but a written account statement mailed to plaintiff, dated June 26, 2006, falsely stated that she owed more than $6,000, including late charges and fees that plaintiff did not owe and that Ocwen had repeatedly refused to correct. (Id. ¶ 40.)

In October 2006, Ocwen issued another notice of default in which it falsely claimed that no payments had been made, when in fact Ocwen was holding plaintiff's payments in a suspense account or escrow account. (Id. ¶ 41.)  Ocwen also falsely claimed that plaintiff had not maintained insurance on the Property. (Id.)

Throughout 2006, plaintiff repeatedly telephoned Ocwen and was told by Ocwen representatives that Ocwen's errors would be corrected, but despite these assurances, Ocwen failed to correct its errors. (Id. ¶ 42.)  Plaintiff alleges that Ocwen never intended to correct its errors, but "sought deliberately to cause [plaintiff] to appear to be in default so that it could continue to charge improper and inflated fees." (Id. ¶ 43.)  Plaintiff further alleges that Ocwen falsely informed credit reporting agencies that plaintiff "was in default on her loan when Ocwen knew and should have known that any defaults were the result of Ocwen's inaccurate and fraudulent accounting." (Id. ¶ 44.)

In December 2006, Ocwen and/or HSBC caused Cal-Western to issue a "Notice of Default and Election to Sell." (Id. ¶ 46.) Ocwen returned plaintiff's payment checks for December 2006 and January 2007, claiming falsely that the payments were not

1   sufficient when it knew or should have known that the payments

2   were sufficient.  (Id. ¶ 45.)

3        In or around March 2007, Ocwen informed plaintiff both

4   orally and in writing that the only way for her to prevent the

5   foreclosure of her home was to sign a "forbearance agreement"

6   that required plaintiff to acknowledge owing additional fees and

7   charges, to make an immediate "down payment" of $1,661.00, and to

8   accept an increase in monthly payments from $1,295.00 to

9   $1,700.00 per month.  (Id. ¶ 47.)  Faced with Ocwen's false

10   claims of default and believing she had no choice, plaintiff

11   signed the agreement and made payments of $1,700.00 per month

12   according to its terms until approximately October 2008.  (Id.)

13        In February 2008, Ocwen sent plaintiff a letter offering her

14   a "loan modification" that would increase plaintiff's balance to

15   more than $166,000.00, even though according to a February 18,

16   2008 monthly statement, plaintiff's outstanding balance was about

17   $155,000.00 and the disputed additional fees and charges totaled

18   only $4,755.00.  (Id. ¶ 51.)  In or around October 2008, Ocwen

19   refused to accept additional payments under the forbearance

20   agreement and informed plaintiff that the only way to avoid

21   foreclosure was to sign the loan modification agreement.  (Id.

22   ¶ 53.)  Plaintiff furnished information that Ocwen requested to

23   process the modification.  (Id. ¶¶ 52-53.)  In or around November

24   2008, an Ocwen representative told plaintiff by telephone that

25   Ocwen could not accept additional payments until the loan

26   modification had been approved and that the process would take

27   thirty days.  (Id. ¶ 54.)

28   ///

7

In a written communication dated December 12, 2008, Ocwen falsely claimed that the Property was unoccupied – even though Ocwen knew or should have known that plaintiff and her family had continuously occupied the Property – and charged plaintiff for the inspection and maintenance of her Property. (Id. ¶ 55.)

Plaintiff repeatedly called Ocwen to try to determine the status of her loan modification and to process her December 2008 payment, but Ocwen refused to process any payments or to provide plaintiff with any information. (Id. ¶ 58.) In late December 2008 or early January 2009, plaintiff again contacted Ocwen to obtain a payoff amount in order to cure Ocwen's claim that plaintiff had defaulted on her loan. (Id. ¶ 59.) Plaintiff spoke to an Ocwen representative who agreed to process a request for a "reinstatement quote" in the amount of $8,258.60. (Id.)

When plaintiff contacted Ocwen to obtain the status of her modification agreement on January 6, 2009, Ocwen told plaintiff that her Property was scheduled to be sold at foreclosure on January 15, 2009. (Id. ¶ 60.) Between January 6 and January 14, 2009, plaintiff contacted Ocwen several times to make a payment, but Ocwen declined her attempts "pending completion of the loan modification." (Id. ¶ 62.) On January 14, 2009, plaintiff spoke with an Ocwen representative named Evelyn, who informed plaintiff that her loan would be cured and the foreclosure sale would not proceed if plaintiff agreed to transmit the amount on the "reinstatement quote" to Ocwen. (Id. ¶ 63.) Plaintiff immediately ordered the wire transfer of $8,258.60 to J.P. Morgan, as provided for by written agreement, and confirmed placement of the wire transfer with Ocwen by fax on the same day.

8

1    (Id. ¶ 64.)

2        On January 16, 2009, Ocwen sent plaintiff a loan payoff

3    quote that included a breakdown of the payoff funds with an

4    expiration date of January 26, 2009.  (Id. ¶ 65.)  Plaintiff

5    understood this payoff quote to be confirmation that a

6    foreclosure sale did not take place.  (Id.)  However, Cal-Western

7    had conducted a trustee's sale on January 15, and title to the

8    Property was transferred to defendant James York ("York") by a

9    deed executed on January 17, 2009.  (Id. ¶ 66.)

10       Around January 30, 2009, plaintiff received a three day

11   notice to quit from York.[3]  (Id. ¶ 69.)  Thereafter, around

12   January 31, Evelyn informed plaintiff that Ocwen had received

13   plaintiff's wire transfer but that the house was sold in

14   foreclosure because the money had not been received "in time."

15   (Id. ¶ 70.)  Evelyn told plaintiff that she (Evelyn) had

16   contacted York and advised him that the sale was a mistake, but

17   that York had refused Ocwen's request to rescind the sale.  (Id.)

18   When plaintiff contacted York directly and asked him to rescind

19   the sale, York claimed he told Ocwen that he would agree to

20   rescind upon receipt of proof from Ocwen that plaintiff made the

21   January 14 wire payment.  (Id. ¶ 71.)  York claimed, however,

22   that Ocwen never sent him proof.[4]  (Id.)

23

24 ─────────────────

25       [3]   Plaintiff's SAC alleges that she received the notice to
     quit from Coral Park Mortgage, Inc. which plaintiff describes as
26   a "shell corporation" used by York "to avoid tax withholding
     obligations in real estate transactions."  (SAC ¶ 69.)

27       [4]   York subsequently filed an unlawful detainer complaint
     against plaintiff on February 9, 2009, claiming title and the
28   right to possession under the trustee's deed.  (Id. ¶ 73.)

                                  9

Plaintiff alleges that between 2005 and 2009, Ocwen provided services to plaintiff in addition to billing and collecting payments.  (Id. ¶¶ 48-57.)  Plaintiff alleges that Ocwen "repeatedly offered (or pretended) to counsel and advise [plaintiff] on the best way to avoid foreclosure and to keep her home."  (Id. ¶ 48.)  In a purported effort to guide and assist plaintiff, Ocwen requested detailed financial information from plaintiff which it directed her to return to her "Loan Resolution Consultant."  (Id. ¶ 50.)  Plaintiff asserts that "Ocwen's conduct was designed to and did create a relationship different from the usual borrower/lender relationship," arguing that this unusual relationship gave rise to a fiduciary duty and a duty of care on the part of Ocwen.  (Id. ¶ 57.)

On May 29, 2009, plaintiff filed this action against defendants Ocwen, Fidelity, Cal-Western, and York, as well as MERS, in the California Superior Court, San Joaquin County. (Docket No. 1.)  On October 28, 2009, plaintiff filed her first amended complaint ("FAC"), adding defendants J.P. Morgan Chase & Co. ("J.P. Morgan") and J.P. Morgan Chase Bank, N.A. ("Chase Bank").  (Id.)  Ocwen and MERS removed the FAC to this court on November 27, 2009, on the basis of federal question jurisdiction, 28 U.S.C. § 1331.  On December 10, 2009, Ocwen and MERS filed a motion to dismiss the FAC pursuant to Rule 12(b)(6).  The court on April 14, 2010 issued a Memorandum and Order ("the Order") granting in part and denying in part the motion.  Plaintiff filed her SAC on May 6, 2010.  Plaintiff voluntarily dismissed her claims against J.P. Morgan and Chase Bank and added HSBC as a defendant.  In her SAC, plaintiff pleads fourteen claims for

relief: (1) cancellation of trustee's deed; (2) quiet title;
(3) injunctive relief; (4) breach of contract; (5) breach of
third party beneficiary obligations; (6) fraud and deception;
(7) fraudulent business practices in violation of California's
Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200,
*et seq.*; (8) violation of California's Rosenthal Fair Debt
Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788 *et
seq.*; (9) unjust enrichment; (10) breach of fiduciary duty;
(11) negligence; (12) violation of the federal Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.
§§ 1962(c),(d); (13) intentional interference with contractual
relations; and (14) negligent interference with contractual
relations.

**STANDARDS**

**I.   Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 8(a), a pleading must
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief." See <u>Ashcroft v. Iqbal</u>, 129
S. Ct. 1937, 1949 (2009).  Under notice pleading in federal
court, the complaint must "give the defendant fair notice of what
the claim is and the grounds upon which it rests." <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations
omitted).  "This simplified notice pleading standard relies on
liberal discovery rules and summary judgment motions to define
disputed facts and issues and to dispose of unmeritorious
claims." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the
complaint must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319,

11

322 (1972).  The court is bound to give plaintiff the benefit of
every reasonable inference to be drawn from the "well-pleaded"
allegations of the complaint.  Retail Clerks Int'l Ass'n v.
Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not
allege "'specific facts' beyond those necessary to state his
claim and the grounds showing entitlement to relief."  Twombly,
550 U.S. at 570.  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal
conclusions cast in the form of factual allegations."  United
States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th
Cir. 1986).  While Rule 8(a) does not require detailed factual
allegations, "it demands more than an unadorned, the
defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S. Ct. at
1949.  A pleading is insufficient if it offers mere "labels and
conclusions" or "a formulaic recitation of the elements of a
cause of action."  Id. at 1950 ("Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice.");  Twombly, 550 U.S. at 555.
Moreover, it is inappropriate to assume that the plaintiff "can
prove facts which it has not alleged or that the defendants have
violated the . . . laws in ways that have not been alleged."
Associated Gen. Contractors of Cal., Inc. v. Cal. State Council
of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, the court may not dismiss a complaint in which
the plaintiff has alleged "enough facts to state a claim to

12

relief that is plausible on its face." Iqbal, 129 S. Ct. at 1949
(citing Twombly, 550 U.S. at 570). Only where plaintiffs have
failed to "nudge[] their claims across the line from conceivable
to plausible" is the complaint properly dismissed. Twombly, 550
U.S. at 570. While the plausibility requirement is not akin to a
probability requirement, it demands more than "a sheer
possibility that a defendant has acted unlawfully." Iqbal, 129
S. Ct. at 1949. This plausibility inquiry is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense." Id. at 1950.

**II.  Rule 12(f)**

     Federal Rule of Civil Procedure 12(f) enables the court on a
motion by a party or by its own initiative to "order stricken
from any pleading . . . any redundant, immaterial, impertinent,
or scandalous matter." The function of a Rule 12(f) motion is to
avoid the time and expense of litigating spurious issues.
Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993),
rev'd on other grounds, 510 U.S. 517 (1994); see also 5A Charles
A. Wright & Arthur R. Miller, Federal Practice and Procedure §
1380 (2d ed. 1990).

     Rule 12(f) motions are generally viewed with disfavor and
not ordinarily granted because they are often used to delay and
because of the limited importance of the pleadings in federal
practice. Bureerong v. Uvawas, 922 F. Supp. 1450, 1478 (C.D.
Cal. 1996). A motion to strike should not be granted unless it
is absolutely clear that the matter to be stricken could have no
possible bearing on the litigation. Lilley v. Charren, 936
F. Supp. 708, 713 (N.D. Cal. 1996).

ANALYSIS

## I.   Motion to Dismiss

Defendants move to dismiss plaintiff's claims for quiet title, breach of contract, breach of third-party beneficiary obligations, fraud, fraudulent business practices, violation of the RFDCPA, unjust enrichment, breach of fiduciary duty, negligence, violation of RICO, intentional interference with contractual relations, and negligent interference with contractual relations.  (Defs.' Mot. to Dismiss SAC ("Defs.' Mot.") at 2.)  In connection with their motion, defendants ask the court to take judicial notice of eight exhibits, including, among other documents, a Deed of Trust and Rider To Security Instrument executed by plaintiff on October 22, 2004, in favor of Fidelity, (Request Judicial Notice Supp. Defs.' Mot. to Dismiss Pls.' SAC ("RFJN"), Ex. 1); an Assignment of Deed of Trust executed by MERS on November 27, 2006, (RFJN, Ex. 5); and a Trustee's Deed Upon Sale, dated January 17, 2009, conveying the Property to defendant York, (RFJN, Ex. 8).  Plaintiff objects to defendants' request.  (Docket No. 35.)

### A.   Defendants' Exhibits

In ruling upon a motion to dismiss, the court may consider matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.  See Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).  Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the

14

trial court or (2) capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be

questioned."  Fed. R. Evid. 201(b).  The court can take judicial

notice of matters of public record, such as pleadings in another

action and records and reports of administrative bodies.  <u>See</u>

<u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1198 (9th Cir. 1988).

     "Even if a document is not attached to a complaint, it may

be incorporated by reference into a complaint if the plaintiff

refers extensively to the document or the document forms the

basis of the plaintiff's claim."  <u>United States v. Ritchie</u>, 342

F.3d 903, 908 (9th Cir. 2003).  "The defendant may offer such a

document, and the district court may treat such a document as

part of the complaint, and thus may assume that its contents are

true for purposes of a motion to dismiss under Rule 12(b)(6)."

<u>Id.</u>  The policy concern underlying the rule is to prevent

plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately

omitting references to documents upon which their claims are

based."  <u>Parrino v. FHP, Inc.</u>, 146 F.3d 699, 706 (9th Cir. 1998),

<u>superceded by statute on other grounds as recognized in</u> <u>Abrego</u>

<u>Abrego v. The Dow Chem. Co.</u>, 443 F.3d 676, 681 (9th Cir. 2006).

     Here, several of plaintiff's claims for relief are dependent

upon, and plaintiff's complaint repeatedly refers to, information

contained in the deed of trust (RFJN, Ex. 1), the assignment of

the deed of trust (RFJN, Ex. 5), and the trustee's deed upon sale

(RFJN, Ex. 8).  (<u>See</u> SAC ¶¶ 11-15, 17-20, 66-68.)  Because they

form the basis of several of plaintiff's claims for relief, the

court takes judicial notice of these documents.  Accordingly, the

court will treat exhibits 1, 5, and 8 as part of the complaint

1  and will assume that their contents are true for purposes of the
2  motion to dismiss.  See Ritchie, 342 F.3d at 908.[5]

3      **B.  Quiet Title**

4      In her second claim for relief, plaintiff seeks to quiet
5  title to the Property against the claims of Fidelity, HSBC, and
6  York, pursuant to California Civil Procedure Code
7  §§ 760.010-764.080.  (SAC ¶¶ 85-90.)  Plaintiff asserts she is
8  the rightful owner in fee simple and that the trustee's deed "is
9  void and subject to cancellation and rescission."  (Id. ¶¶ 86-
10 87.)

11     The purpose of a quiet title action is to determine "'all
12 conflicting claims to the property in controversy, and to decree
13 to each such interest or estate therein as he may be entitled
14 to.'"  Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970)
15 (quoting Peterson v. Gibbs, 147 Cal. 1, 5 (1905)); see also
16 Garcia v. Wachovia Mortgage Corp., 676 F. Supp. 2d 895, 913 (C.D.
17 Cal. 2009).  A plaintiff may bring a quiet title claim "to
18 establish title against adverse claims to real or personal
19 property or any interest therein."  Cal. Civ. Proc. Code
20 § 760.020.

21     In order to state a claim for quiet title, the complaint
22 must be verified and include (1) a legal description of the
23 property and its street address or common designation;
24 (2) the title of the plaintiff and the basis of the title;
25 (3) the adverse claims to the title of the plaintiff; (4) the

26 _____

27     [5]    Plaintiff also objects to the other exhibits to the
   RFJN.  Because the court addresses plaintiff's SAC without resort
28 to these documents, plaintiff's remaining objections are
   overruled as moot.

date as of which the determination is sought; and (5) a prayer

for the determination of the title of the plaintiff against the

adverse claims.  Id. § 761.020.  Further, a plaintiff "shall name

as defendants in the action the persons having adverse claims to

the title of the plaintiff against which a determination is

sought."  Id. § 762.010. "If the claim or the share or quantity

of the claim of a person required to be named as a defendant is

unknown, uncertain, or contingent, the plaintiff shall so state

in the complaint."  Id. § 762.020(b).

California courts have generally held that "the owner of an

equitable interest cannot maintain an action to quiet title

against the owner of the legal title."  Stafford v. Ballinger,

199 Cal. App. 2d 289, 294-95 (1962); see also De Leonis v.

Hammel, 1 Cal. App. 390, 394 (1905).  The rationale underlying

this rule is that "'if the owner of equities could sue to quiet

title he might obtain a judgment based upon his adversary's fraud

without setting up, in his pleadings[,] the facts constituting

such fraud.  This would be manifestly unfair.'"  Kennedy v.

Scally, 62 Cal. App. 367, 371 (1923) (quoting Aalyn's Law Inst.

v. Martin, 173 Cal. 21, 26 (1916)).  Consequently, where the

pleadings in an action "set up the facts" upon which a claim of

title is based, plaintiffs may be "entitled to a decree

determining their interest in the land."  Kennedy, 62 Cal. App.

at 371; see also Leeper v. Beltrami, 53 Cal. 2d 195, 214 (1959)

(noting that "where the legal title is in the defendant, and the

plaintiff seeks to quiet title on the ground defendant's title

was secured from plaintiff by fraud, the plaintiff must plead and

prove facts constituting the fraud.").  Indeed, when the legal

title to property has been acquired by fraud, the available remedies include "quieting title in the defrauded equitable title holder's name and making the legal title holder the constructive trustee of the property for the benefit of the defrauded equitable titleholder." Warren v. Merrill, 143 Cal. App. 4th 96, 114 (2006); see also De Leonis, 1 Cal. App. at 394 (explaining that where "the facts upon which plaintiff's claim is based, are alleged, there is authority to grant any proper relief" permitted under the California Code of Civil Procedure).

Here, defendants argue that (1) plaintiff fails to state a claim because "California does not recognize a challenge to the title by an owner of a merely equitable interest in the property"; (2) plaintiff fails to allege a valid offer of tender of the amount of indebtedness to defendants; and (3) HSBC is not a proper defendant because HSBC has no adverse claim to plaintiff's title. (Defs.' Mem. P. & A. Supp. Mot. Dismiss SAC ("Defs.' Mem.") at 2-3.)

### 1. Quiet Title Claim Against Legal Title Holder

Defendants assert that plaintiff fails to state a claim to quiet title because the legal title to the Property is held by defendant York. (Defs.' Mem. at 3.) However, plaintiff alleges that any defaults on her loan leading to the foreclosure sale of the Property were "the result of Ocwen's inaccurate and fraudulent accounting" (SAC ¶ 44), and thus, that the trustee's deed to York should be set aside as unauthorized and void. (Id. ¶ 87.) Plaintiff alleges a pattern of fraudulent conduct culminating in the foreclosure sale. (Id. ¶ 21.) Because plaintiff asserts that the legal title to the Property was

18

acquired through fraud and alleges a factual basis for her
assertion, the rule precluding a holder of equitable title from
bringing a quiet title claim against the legal title holder is
inapplicable here. See, e.g., De Leonis, 1 Cal. App. at 394.

### 2. Tender of the Amount of Indebtedness

Defendants' assertion that plaintiff failed to tender the
amount of indebtedness to defendants is likewise without merit.
As the court held in its prior Order, plaintiff sufficiently
alleges that she entered a reinstatement quote agreement with
Ocwen to cure her alleged default and that she timely wired
$8,258.60 in accordance with Ocwen's instructions. (SAC ¶¶ 63-
64.) Construing these allegations in the light most favorable to
the plaintiff, it is plausible to infer that she fulfilled her
obligations under the agreement, and thus, that Ocwen had no
contractual basis to exercise the power of sale.

### 3. Proper Defendant

Finally, defendants argue that HSBC is not a proper
defendant to plaintiff's quiet title claim because HSBC has no
claim to the title. (Defs.' Mem. at 3.) Plaintiff counters that
HSBC may have a claim to the Property if plaintiff succeeds in
obtaining a decree setting aside the trustee's deed transferring
the Property to defendant York. (Pl.'s Opp. Mot. to Dismiss SAC
("Pls.' Opp.") at 5-6.) Plaintiff thus appears to allege a claim
by HSBC that is uncertain or contingent, as contemplated under
California Civil Procedure Code § 762.020(b).

According to the assignment of the deed of trust, MERS as
nominee for Fidelity assigned all rights, title, and interest in
the Property to HSBC, the assignee beneficiary, on November 27,

2006.  (RFJN Ex. 5.)  Plaintiff states:  "It is unclear what rights, if any, defendant HSBC Bank could have acquired by reason of this Assignment, since MERS was solely the nominee of Fidelity under the Deed of Trust and does not appear to have had any rights under the Promissory Note."  (SAC ¶ 18.)  Construing the SAC in the light most favorable to plaintiff, the court finds that plaintiff alleges alternate theories, including the theory that HSBC as beneficiary of the deed of trust held an interest in the Property prior to the foreclosure sale.

The beneficiary of a deed of trust containing a power of sale may proceed with a nonjudicial foreclosure sale upon default by the trustor.  See Moeller v. Lien, 25 Cal. App. 4th 822, 830 (1994).  "This interest, the benefici[ary]'s power to cause a sale of the property, is effectively a lien on the property." Yulaeva v. Greenpoint Mortgage Funding, Inc., No. S-09-1504, 2009 WL 2880393, at *9 (E.D. Cal. 2009); see also Monterey S.P. Partnership v. W.L. Bangham, 49 Cal. 3d 454, 460 (1989).  The beneficiary's security interest in the property may be the subject of a quiet title action.  See Cal. Civ. Pro. Code § 760.010(a); Yulaeva, 2009 WL 2880393, at *9.

Here, if plaintiff prevails in her attempt to obtain a decree setting aside the trustee's deed and the parties are restored to the positions they held prior to the sale, HSBC would potentially be the holder of a security interest in the Property and may thus be an adverse claimant for the purposes of plaintiff's quiet title claim.

Accordingly, defendants' motion to dismiss plaintiff's second claim for relief as to defendant HSBC is DENIED.

**C.   Breach of Contract**

In her fourth claim for relief, plaintiff alleges that Fidelity, HSBC, and Ocwen are liable to her for breach of contract.  (SAC ¶¶ 94-104.)  Plaintiff also appears here to proceed under alternate theories according to which Ocwen is either an agent of an undisclosed principal or is itself the principal liable to plaintiff.  (See SAC ¶ 100.)  Plaintiff alleges that Fidelity assigned to Ocwen the loan servicing rights and obligations pertaining to the promissory note and deed of trust and that Ocwen breached obligations it assumed.  (Id. ¶¶ 94-104.)  Further, plaintiff alleges that Ocwen on its own behalf entered into a "Forbearance Agreement" and a "Loan Reinstatement Agreement" with plaintiff.  (Id. ¶¶ 98-101.)

Plaintiff asserts that she performed all her obligations under the agreements and that "Fidelity, HSBC Bank and Ocwen breached the terms of the Promissory Note, the Forbearance Agreement and the Loan Reinstatement Agreement" by, inter alia, failing to credit timely payments, misapplying payments received, prematurely referring plaintiff's loan to collections, charging improper fees, and proceeding with the foreclosure sale despite plaintiff's compliance with terms for reinstatement of the loan. (Id. ¶ 103.)

A claim for breach of contract must include facts demonstrating (1) that a contract exists between the parties; (2) that the plaintiff performed his contractual duties or was excused from nonperformance; (3) that the defendant breached those contractual duties; and (4) that plaintiff's damages were a result of the breach.  Reichert v. Gen. Ins. Co. of America, 68

21

Cal. 2d 822, 830 (1968); <u>First Commercial Mortgage Co. v. Reece</u>, 89 Cal. App. 4th 731, 745 (2001). "A written contract may be pleaded either by its terms-set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference-or by its legal effect." <u>McKell v. Washington Mut., Inc.</u>, 142 Cal. App. 4th 1457, 1489 (2006). Pleading a contract by its legal effect requires the plaintiff to "'allege the substance of its relevant terms,'" which is "'more difficult'" because the plaintiff must engage in "'careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'" <u>Id.</u> (quoting 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading § 480, p. 573).

Defendants argue that plaintiff fails to state a breach of contract claim against Ocwen because Ocwen was not a party to the promissory note and merely functioned as the servicer of the loan in making a forbearance agreement and loan modification agreement with plaintiff. (Defs.' Mem. at 4.) Defendants further argue that plaintiff fails to state a breach of contract claim against Ocwen because plaintiff does not state whether the alleged contracts were oral or written, does not attach the agreements to the SAC, and does not set forth the terms of the contracts. (<u>Id.</u> at 5.) Finally, defendants argue that plaintiff fails to state a breach of contract claim against HSBC because plaintiff fails to allege the existence of any contract between plaintiff and HSBC or to allege facts that would give rise to a plausible claim for breach of contract by HSBC. (<u>Id.</u> at 5-6.)

Contrary to defendants' assertions, plaintiff alleges a theory of liability under which Ocwen assumed contractual

obligations to plaintiff arising out of the promissory note and deed of trust and independently entered two additional contracts with plaintiff: a forbearance agreement and a loan modification agreement.  (SAC ¶¶ 97-101.)  Thus, plaintiff sufficiently alleges the existence of contracts between plaintiff and Ocwen. Likewise, although plaintiff's allegations regarding the role of HSBC are less than fully clear, a liberal construction of the SAC permits the court to infer an alternative theory of liability according to which HSBC assumed contractual obligations to plaintiff when MERS assigned the deed of trust to HSBC. (See SAC ¶ 18) (alleging that MERS assigned its interest in the mortgage to HSBC).

With respect to the forbearance agreement and the loan reinstatement agreement, plaintiff has neither attached these documents to her complaint nor stated their terms verbatim, and her allegations are too vague to plead the legal effect of either document.  However, the court has taken judicial notice of the deed of trust, and plaintiff alleges sufficient facts to state a plausible claim for breach of various obligations arising under the deed of trust against both Ocwen and HSBC.

Accordingly, defendants' motion to dismiss plaintiff's claim for breach of contract is DENIED as to the allegations concerning the deed of trust and GRANTED with leave to amend concerning all other alleged contracts.

### D.   Breach of Third Party Beneficiary Obligations

In her fifth claim for relief, plaintiff alleges that Ocwen entered into an agreement or agreements with Fidelity and/or with HSBC and that the agreement(s) were intended to benefit

23

1  plaintiff. (SAC ¶¶ 105-07.)  Plaintiff alleges that Ocwen

2  breached the agreement(s) by, *inter alia*, failing to credit

3  timely payments, misapplying payments received, prematurely

4  referring plaintiff's loan to collections, charging improper

5  fees, and proceeding with the foreclosure sale despite

6  plaintiff's compliance with terms for reinstatement of the loan.

7  (Id. at ¶ 108.)

8       "A contract, made expressly for the benefit of a third

9  person, may be enforced by him at any time before the parties

10  thereto rescind it."  Cal. Civ. Code § 1559.  The contract "does

11  not need to specifically name the party as the beneficiary; the

12  only requirement is that 'the party is more than incidentally

13  benefitted by the contract.'"  Cartwright v. Viking Indus., Inc.,

14  No. 2:07-CV-02159, 2009 WL 2982887, *9 (E.D. Cal. Sept. 14, 2009)

15  (quoting Shell v. Schmidt, 126 Cal. App. 2d 279, 290 (1954)).

16  "The test for determining whether a contract was made for the

17  benefit of a third person is whether an intent to benefit a third

18  person appears from the terms of the contract."  Johnson v.

19  Holmes Tuttle Lincoln-Mercury, Inc., 160 Cal. App. 2d 290, 297

20  (1958).  "If the terms of the contract necessarily require the

21  promisor to confer a benefit on a third person, then the

22  contract, and hence the parties thereto, contemplate a benefit to

23  the third person."  Id.

24       Here, defendants argue that plaintiff has not alleged any

25  facts to demonstrate that Ocwen and HSBC intended plaintiff to be

26  the beneficiary of the servicing agreement, and that plaintiff

27  has not sufficiently alleged facts to establish a breach of the

28  servicing agreement. (Defs.' Mem. at 7-8.)  However, plaintiff

alleges that Ocwen and Fidelity and/or HSBC entered one or more agreements requiring Ocwen to provide various services to plaintiff, including billing plaintiff, providing her with information regarding her account, and consulting with plaintiff regarding loan modification and forbearance.  (See SAC ¶¶ 48-57.) Thus, plaintiff sufficiently alleges that she is the third party beneficiary of one or more contracts between Ocwen and Fidelity and/or HSBC.  Further, plaintiff's allegations are sufficient to put defendants on notice of the basis of her claims. Accordingly, defendants' motion to dismiss plaintiff's fifth claim for relief is DENIED.

### E.   Fraud

Plaintiff in her sixth claim for relief alleges that Ocwen engaged in fraud by making false and misleading statements to plaintiff regarding the status of her loan.  (SAC ¶¶ 110-116.)

Under Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements, to allege a claim for fraud, a plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations omitted).  Further, "[w]hen a fraudulent statement is alleged, the plaintiff must set forth what is false or misleading about the statement, and why it is false."  Marksman Partners, L.P. v. Chantal Pharm. Corp., 927 F. Supp. 1297, 1308 (C.D. Cal. 1996) (internal quotations and citation omitted).  The purpose of Rule 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have

done, so that they may defend against the accusations.  <u>Concha v.</u>
<u>London</u>, 62 F.3d 1493, 1502 (9th Cir. 1995).

Furthermore, when asserting a fraud claim against a
corporation, a "plaintiff's burden . . . is even greater . . . .
The plaintiff must 'allege the names of the persons who made the
allegedly fraudulent representations, their authority to speak,
to whom they spoke, what they said or wrote, and when it was said
or written.'"  <u>Lazar v. Superior Court</u>, 12 Cal. 4th 631, 645
(1996) (quoting <u>Tarmann v. State Farm Mut. Auto. Ins. Co.</u>, 2 Cal.
App. 4th 153, 157 (1991)); <u>see also</u> <u>Akhavein v. Argent Mortgage</u>
<u>Co.</u>, No. 5:09-cv-00634, 2009 U.S. Dist. LEXIS 61796, at *10 (N.D.
Cal. July 17, 2009); <u>Edejer v. DHI Mortgage Co.</u>, No. C 09-1302,
2009 U.S. Dist. LEXIS 52900, at *36 (N.D. Cal. June 12, 2009)
(dismissing fraud claim where plaintiff did not allege any
misrepresentation or false statements made by defendants and
failed to allege names of individuals who made fraudulent
representations).

Defendants contend that plaintiff fails to state a claim for
fraud because plaintiff "does not contend and her allegations do
not support an inference" that Ocwen committed any acts with a
specific intent to defraud her.  (Defs.' Mem. at 8.)  However,
under Rule 9(b), "[m]alice, intent, knowledge and other
conditions of a person's mind may be alleged generally."  Here,
plaintiff alleges that "Ocwen engaged in a pattern and scheme to
disseminate false and misleading information in order to confuse
and trick [plaintiff] into making payments of amounts that were
not due and into believing that [her loan] was in default when in
fact the loan was not in default."  (<u>Id.</u> ¶ 111.)  These

allegations sufficiently allege intent to engage in fraud, and thus, plaintiff satisfies her pleading burden under Rule 9(b).

Accordingly, defendants' motion to dismiss plaintiff's fraud claim is DENIED.

### F.   California Business & Professions Code § 17200

In her seventh claim for relief, plaintiff alleges that defendants Ocwen, York, Fidelity, and HSBC violated § 17200 of the California Business and Professions Code by engaging in fraudulent business practices.  (SAC ¶¶ 117-20.)

The Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."  <u>Id.</u> § 17200.  The UCL "incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law."  <u>Plascencia v. Lending 1st Mortgage</u>, 583 F. Supp. 2d 1090, 1098 (9th Cir. 2008); <u>see also</u> <u>Farmers Ins. Exch. v. Superior Court</u>, 2 Cal. 4th 377, 383 (1992).  "California's UCL has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable' while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.'"  <u>Hauk v. JP Morgan Chase Bank U.S.</u>, 552 F.3d 1114 (9th Cir. 2009) (internal citations omitted)).  "Violation of almost any federal, state, or local law may serve as the basis for a UCL claim." <u>Plascencia</u>, 583 F. Supp. at 1098 (citing <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994)).

Defendants argue that plaintiff fails to allege her claim with sufficient particularity, and that plaintiff's claim against

1 HSBC fails because plaintiff does not allege a claim for fraud

2 against HSBC.  (Defs.' Mem. at 9.)

3       Plaintiff's UCL claim is founded upon the same allegations

4 as her fraud claim, and as set forth *supra*, plaintiff's

5 allegations are sufficient to state a claim for fraud against

6 Ocwen.  However, plaintiff does not plead any facts to establish

7 fraudulent conduct by HSBC.  "Rule 9(b) does not allow a

8 complaint to merely lump multiple defendants together but

9 require[s] plaintiffs to differentiate their allegations when

10 suing more than one defendant...and inform each defendant

11 separately of the allegations surrounding his alleged

12 participation in the fraud."  <u>Swartz v. KPMG LLP</u>, 476 F.3d 756,

13 765-766 (9th Cir. 2007) (internal quotation and citation

14 omitted).  Because plaintiff fails to state any allegations of

15 fraud against HSBC, let alone allegations sufficient to satisfy

16 the heightened pleading standards of Rule 9(b), plaintiff's UCL

17 allegations against HSBC fail to state a claim.

18       Accordingly, defendants' motion to dismiss plaintiff's claim

19 for violations of California Business & Professions Code § 17200

20 is DENIED with respect to Ocwen and GRANTED with leave to amend

21 with respect to HSBC.

22       **G.   California's Rosenthal Act**

23       Plaintiff in her eighth claim for relief alleges that Ocwen

24 violated California's Rosenthal Fair Debt Collection Practices

25 Act ("RFDCPA"), Cal. Civ. Code §§ 1788 *et seq.*, by falsely

26 representing plaintiff's debt, by adding unwarranted debt, by

27 falsely informing credit reporting agencies that plaintiff had

28 defaulted on her loan when it knew that these statements would

defame plaintiff, and by placing telephone calls seeking
financial information about plaintiff without disclosing the
identity of the caller.  (SAC ¶ 122.)

The purpose of the RFDCPA is "to prohibit debt collectors
from engaging in unfair or deceptive acts or practices in the
collection of consumer debts and to require debtors to act fairly
in entering into and honoring such debts."  Cal. Civ. Code
§ 1788.1(b).  The RFDCPA defines a "debt collector" as "any
person who, in the ordinary course of business, regularly, on
behalf of himself or herself of others, engages in debt
collection."  § 1788.2(c).  A debt collector violates the act,
*e.g.*, when it engages in threats, use of profane language, or
harassment; when it places telephone calls without disclosing the
caller's identity; when it communicates to a third party that a
debtor has engaged in conduct, other than failure to pay a
consumer debt, that the debt collector knows or has reason to
believe will defame the debtor; and when it makes a false
representation that a consumer debt may be increased by the
addition of fees or other charges if such fees or charges may not
be lawfully added to the existing debt.  Id. §§ 1788.10;
1788.11(a),(b),(e); 1788.13(e).

Ocwen argues that plaintiff fails to state a claim under the
RFDCPA (1) because Ocwen is not a "debt collector" within the
meaning of the act and (2) because plaintiff fails to allege any
facts demonstrating a violation of RFDCPA.  (Defs.' Mem. at 10-
11.)  The RFDCPA's definition of "debt collector" broadly
encompasses "any person" who regularly engages in debt
collection.  Cal. Civ. Code § 1788.2(c).  Here, plaintiff alleges

that Ocwen regularly billed her and collected payments on her

mortgage loan debt from 2004 through 2009.  (See SAC ¶ 17.)

Thus, plaintiff pleads sufficient facts to show that Ocwen is a

"debt collector" under the RFDCPA.

As defendants point out, some federal district courts have

broadly held that the RFDCPA does not apply to mortgage

foreclosures.  See, e.g., Rosal v. First Fed. Bank of Cal., 671

F. Supp. 2d 1111, 1135 (N.D. Cal. 2009).  Here, however, the

gravamen of plaintiff's claim is that Ocwen engaged in a pattern

of improper conduct in the course of servicing her loan,

ultimately causing the wrongful foreclosure of the home.  Hence,

plaintiff's claim arises out of debt collection activities beyond

the scope of the ordinary foreclosure process, and consequently,

a remedy may be available under the RFDCPA.  See Wilson v. JP

Morgan Chase Bank, NA, No. CIV 2:09-8630, 2010 WL 2574032, at *10

(E.D. Cal. June 25, 2010) (dismissing an RFDCPA claim where the

plaintiff did not identify "any debt collection actions of

defendants that fall outside the normal foreclosure process").

Turning to the substance of her claim, plaintiff asserts

that Ocwen violated RFDCPA by making defamatory statements about

her to credit reporting agencies and by placing anonymous calls

seeking financial information about her.  (SAC ¶ 122.)  But

plaintiff fails to plead any details regarding the alleged

statements and calls.  These bare allegations thus fail to put

Ocwen on notice of the basis for the alleged RFDCPA violations.

See Twombly, 550 U.S. at 555.  However, plaintiff does

sufficiently allege facts to support her claim that Ocwen

represented to plaintiff that she would be charged unlawful fees.

(See, e.g., SAC ¶¶ 31, 38.)

Accordingly, defendants' motion to dismiss plaintiff's claim for violations of the RFDCPA is DENIED as to the allegations that Ocwen represented that plaintiff would be charged unlawful fees, and GRANTED with leave to amend as to all other allegations.

### H.   Unjust Enrichment/Restitution

In her ninth claim for relief, plaintiff alleges that Ocwen, York, Fidelity, and HSBC "unjustly benefitted from the acts described" in the SAC and unjustly retained benefits at her expense.  (SAC ¶ 124-26.)

In order to establish a claim for unjust enrichment, a plaintiff must plead "receipt of a benefit and unjust retention of the benefit at the expense of another." Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726 (2000).  Furthermore, the plaintiff must demonstrate that the defendant received the benefit through mistake, fraud, coercion or request.  Nibbi Bros., Inc. v. Home Fed. Sav. & Loan Ass'n, 205 Cal. App. 3d 1415, 1422 (1988).

HSBC argues that plaintiff fails to allege any facts demonstrating that HSBC unjustly received and retained a benefit, and that plaintiff thus fails to state a claim for unjust enrichment against HSBC.  (Defs.' Mem. at 11-12.)  In its prior Order, the court held that plaintiff had sufficiently alleged that by proceeding with the trustee's sale despite plaintiff's compliance with the reinstatement quote, Ocwen unjustly received a benefit.  (Order at 26.)  Liberally construing the allegations in the SAC, plaintiff may be understood to allege an alternative theory of liability under which HSBC by assignment became the

31

1 beneficiary of the deed of trust and Ocwen's principal, that HSBC
2 instigated the trustee's sale, and that HSBC thus unjustly
3 received the proceeds of an improper foreclosure sale. (See SAC
4 ¶ 18-19.) Consequently, plaintiff alleges sufficient facts to
5 state a claim for unjust enrichment against HSBC.

6     Accordingly, defendants' motion to dismiss plaintiff's claim
7 for unjust enrichment is DENIED.

8     **I.   Breach of Fiduciary Duty**

9     Plaintiff in her tenth claim for relief alleges breach of
10 fiduciary duty by defendants Ocwen, Fidelity, and HSBC. (SAC ¶¶
11 127-30.)  Plaintiff bases her claim on Ocwen's conduct in
12 servicing her loan, pointing, *inter alia*, to Ocwen's alleged
13 failure to timely credit payments, failure to provide plaintiff
14 with timely information regarding her loan, and imposition of
15 improper fees. (Id. ¶ 128.)

16     "To state a claim for breach of a fiduciary duty, 'a
17 plaintiff must demonstrate the existence of a fiduciary
18 relationship, breach of that duty and damages.'" Serrano v. Sec.
19 Nat'l Mortgage Co., No. 09-CV-1416, 2009 U.S. Dist. LEXIS 71725,
20 at *12-13 (S.D. Cal. Aug. 14, 2009) (quoting Shopoff & Cavallo
21 LLP v. Hyon, 167 Cal. App. 4th 1489, 1509 (2008).  "Absent
22 'special circumstances' a loan transaction 'is at arms-length and
23 there is no fiduciary relationship between the borrower and
24 lender.'" Rangel v. DHI Mortgage Co., Ltd., No. CV F 09-1035,
25 2009 U.S. Dist. LEXIS 65674, at *8 (E.D. Cal. July 21, 2009)
26 (quoting Oaks Mgmt. Corp. v. Superior Court, 145 Cal. App. 4th
27 453, 466 (2006)); see also Nymark v. Heart Fed. Savings & Loan
28 Ass'n, 231 Cal. App. 3d 1089, 1096 (stating that "As a general

rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.").

Ocwen and HSBC argue that plaintiff fails to state a claim because plaintiff fails to establish a fiduciary duty on the part of either Ocwen or HSBC. (Defs.' Mem. at 12-13.)  Curiously, or perhaps tellingly, the only precedent plaintiff cites in support of her claim is a case in which the Ninth Circuit refused to hold as a matter of law that the relationship between an investment banker and a client could not be a fiduciary relationship.  <u>In re Daisy Systems Corp.</u>, 97 F.3d 1171, 1178 (9th Cir. 1996).  Rather, the Ninth Circuit stated, "the existence of a fiduciary relation is a question of fact which properly should be resolved by looking to the particular facts and circumstances of the relationship at issue."  <u>Id</u>.

Turning to the particular facts and circumstances alleged here, plaintiff fails to plead any allegations to plausibly suggest that her relationship with Ocwen was anything other than an ordinary, arms-length relationship.  Under California law, a borrower-lender relationship does not create a fiduciary duty.  <u>See, e.g.</u>, <u>Rangel</u>, 2009 U.S. Dist. LEXIS 65674, at *8.  Plaintiff points to the financial "counseling" Ocwen provided her as evidence of the assumption of a fiduciary duty.  (<u>See</u> SAC ¶¶ 48-57.)  However, the facts plaintiff alleges do not demonstrate more than an attempt to collect an outstanding debt.  Because plaintiff does not plead facts sufficient to show how Ocwen's role in servicing her loan exceeded the conventional role of "a

mere lender of money," Nymark, 231 Cal. App. 3d at 1096,

plaintiff fails to establish that Ocwen owed her a fiduciary

duty.  Nor does plaintiff allege facts sufficient to establish

that she had any relationship whatsoever with HSBC.

While under Federal Rule of Civil Procedure 15(a)(2), leave

to amend should be freely given, the court is not required to

allow *futile* amendments.  Klamath-Lake Pharm. Ass'n v. Klamath

Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983).  Here,

amendment of plaintiff's breach of fiduciary duty claim would be

futile under the governing law described above, and plaintiff

does not allege any other facts that could plausibly give rise to

such a claim against defendants.  See Iqbal, 129 S. Ct. at 1949.

Accordingly, defendants' motion to dismiss plaintiff's

breach of fiduciary duty claim is GRANTED without leave to amend.

## I.   Negligence

In her eleventh claim for relief, plaintiff alleges that

defendants Ocwen, Fidelity, and HSBC are liable for negligence.

(SAC ¶ 131-35.)  Plaintiff argues that defendants owed her a duty

of care, "the least of which was the accurate and timely

accounting and reporting of her debt payments, and the accurate

and timely communication to [plaintiff] and various credit

reporting agencies of the nature and amount of her debt."  (Id. ¶

132.)  Plaintiff alleges that defendants breached this duty, thus

causing her damages in the form of financial harm, damage to her

reputation, emotional distress, and the foreclosure of her home.

(Id. ¶ 134.)

Under California law, the elements of a claim for negligence

are "(a) a *legal duty* to use due care; (b) a *breach* of such legal

34

1  duty; and (c) the breach as the *proximate or legal cause* of the

2  resulting injury."  Ladd v. County of San Mateo, 12 Cal. 4th 913,

3  917 (1996) (emphasis in original) (internal quotations and

4  citation omitted); see Cal. Civ. Code § 1714(a).  A financial

5  institution generally has no duty of care to a borrower unless

6  the institution exceeds the scope of the traditional role of a

7  lender of money.  Nymark, 231 Cal. App. 3d at 1095.

8      Defendants argue that plaintiff's negligence claim fails as

9  a matter of law because defendants do not owe plaintiff a tort

10  duty of care.  (Defs.' Mem. at 12-13.)  As with plaintiff's

11  breach of fiduciary duty claim, plaintiff does not allege facts

12  that would suggest Ocwen's actions exceeded "the domain of the

13  usual money lender."  Nymark, 231 Cal. App. 3d at 1096 (internal

14  quotations and citation omitted).  Because plaintiff does not

15  plead sufficient allegations to show a relationship with Ocwen or

16  HSBC outside the scope of a traditional lender-borrower

17  relationship, she fails to establish that either Ocwen or HSBC

18  owed her a tort duty of care.  Plaintiff's reliance on Shafer v.

19  Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, 107 Cal.

20  App. 4th 54, 70 (2003), is inapposite.  (See Pls.' Opp. at 16.).

21  The court in Shafer recognized a duty to refrain from engaging in

22  intentionally tortious conduct; this duty is not applicable to

23  plaintiff's claim for negligence.

24      As with her breach of fiduciary duty claim, amendment of

25  plaintiff's negligence claim would be futile under the governing

26  law, and plaintiff fails to allege any other facts that could

27  plausibly give rise to a duty on the part of defendants.  See

28  Iqbal, 129 S. Ct. at 1949.

1    Accordingly, defendants' motion to dismiss plaintiff's

2  negligence claim is GRANTED without leave to amend.

3        **J.   RICO**

4    In her twelfth claim for relief, plaintiff alleges that

5  Ocwen violated the federal Racketeer Influenced and Corrupt

6  Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and § 1962(d), by

7  engaging in a pattern of racketeering activity consisting of mail

8  and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.   In

9  addition, plaintiff alleges that Ocwen violated RICO through "the

10  use of the mail and interstate commerce . . . in violation of 18

11  U.S.C. § 1852;[6] and repeated violations of the Fair Debt

12  Collection Practices Act, 15 U.S.C. § 1692 *et seq.*"[7]  (SAC ¶

13  141.)

14    Title 18 U.S.C. § 1962(c) makes it "unlawful for any person

15  employed by or associated with any enterprise" engaged in or

16  affecting interstate commerce "to conduct or participate,

17  directly or indirectly, in the conduct of such enterprise's

18  affairs through a pattern of racketeering activity."  Section

19  1962(d) makes it unlawful for any person to conspire to commit a

20  violation of § 1962(c).  The "racketeering activity" prohibited

21  under § 1962(c) includes a variety of acts indictable under Title

22  18 of the United States Code, including "any act which is

23

24    ──────────────

25       [6]    The court construes the SAC to refer to 18 U.S.C. §
   1962, and not to 18 U.S.C. § 1852, which deals with the removal
26  or transportation of timber.

27       [7]    Violations of 15 U.S.C. § 1692 are not predicate RICO
   violations.  <u>See</u> 18 U.S.C. § 1961(1).  The court deems this
28  language to be superfluous, and does not understand plaintiff to
   state a separate claim for relief under the Fair Debt Collection
   Practices Act.

indictable under . . . section 1341 (relating to mail fraud)
[and] section 1343 (relating to wire fraud."  18 U.S.C. §
1961(1)(B).  RICO permits "[a]ny person injured in his business
or property by reason of a violation of section 1962" to recover
treble damages.  18 U.S.C. § 1964(c).

Ocwen argues that plaintiff lacks standing to assert a RICO
claim, and that plaintiff fails to allege the elements of a RICO
claim against Ocwen.  (Defs.' Mem. at 13-16.)

### 1.   Standing

A plaintiff has standing to bring a RICO claim and can
recover only to the extent that "he has been injured in his
business or property by the conduct constituting the violation."
Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); See 18
U.S.C. § 1964.  Furthermore, a RICO plaintiff "'must show proof
of concrete financial loss' and must demonstrate that the
racketeering activity proximately caused the loss."  Guerrero v.
Gates, 442 F.3d 697, 707 (9th Cir. 2006)(citing Chaset v.
Fleer/Skybox Int'l, 300 F.3d 1083, 1087 (9th Cir. 2002)).

Ocwen advances two arguments in support of its contention
that plaintiff lacks standing to bring her RICO claim.  First,
Ocwen asserts that plaintiff's claim is not within the scope of
litigation contemplated under RICO because RICO was "'intended to
combat organized crime, not to provide a federal cause of action
and treble damages to every tort plaintiff.'"  (Defs.' Mem. at 14
(quoting Dumas v. Major League Baseball Props., Inc., 104 F.
Supp. 2d 1220, 1221 (S.D. Cal. 2000)).)   Second, Ocwen maintains
that plaintiff seeks to recover for injuries not compensable
under RICO, citing Berg v. First State Ins. Co., 915 F.2d 460,

1  (9th Cir. 1990), and <u>Izenberg v. ETS Servs., LLC</u>, 589 F. Supp. 2d

2  1193, 1204 (S.D. Cal. 2008) (Defs.' Reply Opp. Mot. to Dismiss

3  Pls.' SAC ("Defs.' Reply") at 7-8.)

4      Regarding Ocwen's first argument, the Supreme Court has

5  expressly declined to limit the pattern of racketeering

6  encompassed by RICO to organized crime activity.  <u>See</u> <u>H.J. Inc.</u>

7  <u>v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 248 (1989)

8  (explaining that "Congress for cogent reasons chose to enact a

9  more general statute, one which, although it had organized crime

10  as its focus, was not limited in application to organized

11  crime"); <u>see</u> <u>also</u> <u>Sedima</u>, 473 U.S. at 497 (stating that "RICO is

12  to be read broadly.").  Here, plaintiff bases her RICO claim on

13  allegations of mail and wire fraud allegedly committed "on a

14  nearly monthly basis over a period of more than four years."

15  (Pls. Opp. at 16).  Because the "racketeering activity"

16  encompassed by RICO is defined to include mail and wire fraud, 18

17  U.S.C. §§ 1341, 1343, plaintiff alleges injury within the scope

18  of RICO.

19      Notwithstanding Ocwen's assertions to the contrary,

20  plaintiff also alleges losses that are compensable under RICO.

21  Plaintiff asserts that defendants' acts of mail and wire fraud

22  caused her financial losses in the form of excessive fees and

23  costs, as well as the loss of her home as a result of the

24  foreclosure sale.  (Pl.'s Opp. at 18.)  These alleged injuries

25  constitute a "concrete financial loss" of plaintiff's "property,"

26  and thus satisfy the injury requirement of RICO standing.  <u>See</u>

27  <u>Guerrero</u>, 442 F.3d at 707.

28  ///

1    Ocwen's reliance on <u>Berg</u> and <u>Izenberg</u> is misplaced.   In

2  <u>Berg</u>, the plaintiffs suffered no financial loss but sought RICO

3  recovery for emotional distress.   915 F.2d at 464.   The court

4  held that emotional distress was not a compensable injury to

5  "business or property" within the meaning of §1964(c).   <u>Id.</u>

6  Here, by contrast, plaintiff alleges financial injury in the form

7  of excess fees and costs, as well as the loss of her house.   (SAC

8  ¶¶ 21, 60-70.)   Thus, <u>Berg</u> is distinguishable.   Similarly, in

9  <u>Izenberg</u>, the court found that the plaintiffs failed to state a

10  RICO claim where the only financial injury pled consisted of

11  legal fees and the alleged possibility of future losses in the

12  form of foreclosure on the plaintiffs' property and excess

13  mortgage fees.   589 F. Supp. 2d at 1204-05.   Here, however,

14  plaintiff alleges actual financial losses, and <u>Izenberg</u> is

15  therefore inapplicable.   Consequently, Ocwen fails to demonstrate

16  that plaintiff lacks standing to bring a RICO claim.

17              **2.   Elements of a RICO Claim**

18    In order to state a claim for a violation of § 1962(c), a

19  plaintiff must plead "(1) conduct (2) of an enterprise (3)

20  through a pattern (4) of racketeering activity."   <u>Sedima,</u>

21  <u>S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 496 (1985).

22    "To allege a violation of the mail fraud statute, it is

23  necessary to show (1) the defendants formed a scheme or artifice

24  to defraud; (2) the defendants used the United States mails or

25  caused a use of the United States mails in furtherance of the

26  scheme; and (3) the defendants did so with the specific intent to

27  deceive or defraud."   <u>Schreiber Distrib. Co. v. Serv-Well</u>

28  <u>Furniture Co., Inc.</u>, 806 F.2d 1393, 1399-1400 (9th Cir. 1986).

The elements of wire fraud are identical but require use of the United States wires rather than the mails. _Id._ at 1400.

The Ninth Circuit has held that the particularity requirements of Rule 9(b) apply to RICO claims. _Moore v. Kayport Package Exp., Inc._, 885 F.2d 531, 541 (9th Cir. 1989).  Thus, "[a]llegations of fraud under section 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." _Schreiber_, 806 F.2d at 1401 (internal quotations and citation omitted).

Ocwen argues that plaintiff fails to allege facts establishing a pattern of racketeering activity by Ocwen and fails to allege the existence of an enterprise within the meaning of 1962(c).  (Defs.' Mem. at 15-16.)

### a.  Pattern of Racketeering Activity

To establish a "pattern of racketeering activity" under RICO, a plaintiff must show at least two "predicate acts" of racketeering within ten years.  _See_ 18 U.S.C. § 1961(5); _Turner v. Cook_, 362 F.3d 1219, 1229 (9th Cir. 2004).  "A 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" _Turner_, 362 F.3d at 1229 (quoting _H.J. Inc._, 492 U.S. at 239).  The Supreme Court has identified two types of continuity: closed-ended continuity, consisting of "a closed period of repeated conduct," and open-ended continuity, consisting of "past conduct that by its nature projects into the future with a threat of repetition." _H.J., Inc._, 492 U.S. at 241.  The Court has emphasized that continuity is "centrally a temporal concept." _Id._ at 242.  Thus,

40

"[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement" because "Congress was concerned in RICO with long-term criminal conduct."   Id.

Here, Ocwen asserts that plaintiff fails to allege (1) any conduct affecting interstate commerce and (2) "a causal connection between Ocwen's alleged wrongdoing and the purported pattern." (Defs.' Mem. at 15, 15 n.3.)

While an "effect on commerce is an essential element of a RICO violation," the "required nexus need not be great"; indeed, even a "minimal effect on interstate commerce satisfies this jurisdictional element." United States v. Bagnariol, 665 F.2d 877, 892 (9th Cir. 1981).  Here, plaintiff alleges that Ocwen made use of the mails and wires to conduct fraudulent activities. These allegations suffice to meet the requirement of a "minimal effect on interstate commerce."

Furthermore, despite Ocwen's argument that plaintiff fails to allege a "causal connection" between Ocwen's actions and a pattern of racketeering activity, plaintiff in fact alleges several specific instances of fraudulent activity between January 2005 and January 2009 involving the use of the wires and mails.[8] (See SAC ¶¶ 21-22, 28-29, 31, 38, 43, 55.)  Plaintiff thus adduces more than two predicate acts of alleged racketeering activity and alleges a pattern of criminal activity extending

---

[8]     In its motion to dismiss, Ocwen does not address, and thus the court does not reach, the issue of whether plaintiff adequately alleges all the elements of wire and mail fraud with the particularity required by Rule 9(b).  Here, the court assumes without deciding that plaintiff sufficiently alleges the elements of these RICO predicate offenses.

1    beyond "a few weeks or months."  _H.J., Inc._, 492 U.S. at 242.

2    Hence, plaintiff sufficiently alleges long-term criminal activity

3    to satisfy the Supreme Court's test for a closed-ended pattern of

4    continuity.  (_See_, _e.g._, SAC ¶¶ 21-22.)

5                    **b.   Enterprise**

6         Title 18 U.S.C. § 1962(c) provides:  "It shall be unlawful

7    for any person employed by or associated with any enterprise" to

8    conduct or participate in the conduct of the enterprise's affairs

9    through a pattern of racketeering activity.  RICO broadly defines

10   "enterprise" to include "any individual, partnership,

11   corporation, association, or other legal entity, and any union or

12   group of individuals associated in fact although not a legal

13   entity."  18 U.S.C. § 1961(4).  The Supreme Court has explained

14   that "Section 1961(4) describes two categories of associations

15   that come within the purview of the 'enterprise' definition.  The

16   first encompasses organizations such as corporations and

17   partnerships, and other 'legal entities.'  The second covers 'any

18   union or group of individuals associated in fact although not a

19   legal entity.'"  _United States v. Turkette_, 452 U.S. 576, 581-82

20   (1981).

21        The Ninth Circuit interprets § 1962(c) to require a

22   distinction between the "person" named as the defendant and the

23   "enterprise" with which the "person" is employed or associated.

24   _See_ _Sever v. Alaska Pulp Corp._, 978 F.2d 1529, 1533 (9th Cir.

25   1992).  Thus, "for the purposes of a single action, a corporate

26   defendant cannot be both the RICO person and the RICO enterprise

27   under section 1962(c)."  _Id._ at 1534.

28   ///

                              42

However, a plaintiff may be able to state a claim for a violation of § 1962(c) against corporate employees where the corporation is named as the "enterprise." See Cedric Kushner Promotions, Ltd., v. King, 533 U.S. 158, 163 (2001) (holding that the president and sole employee of a closely held corporation was a "person" distinct from the "enterprise" of the corporation itself); see also Miranda v. Ponce Fed. Bank, 948 F.2d 41, 45 (1st Cir. 1991) (explaining that "Officers of a corporate enterprise may be personally liable for civil RICO violations if they conducted their employer's affairs through a proscribed pattern of racketeering activity."). Consequently, "the inability of a corporation to operate except through its officers is not an impediment to section 1962(c) suits," and poses a problem "only when the *corporation* is the named defendant–when it is both the 'person' and the 'enterprise.'" Sever, 978 F.2d at 1534 (emphasis in original).

In addition, "a group or union consisting *solely* of corporations or other legal entities can constitute an 'associated in fact' enterprise." United States v. Blinder, 10 F.3d 1468, 1473 (9th Cir. 1993) (emphasis in original). Significantly, an "enterprise" may consist entirely of corporations that are also named as defendants. See River City Mkts., Inc. v. Fleming Foods West, Inc., 960 F.2d 1458, 1461-62 (9th Cir. 1992) (explaining that while "a single individual or entity cannot be both the RICO enterprise and an individual RICO defendant" because "an individual cannot associate or conspire with himself," "[a]ll the circuits that have considered the question have concluded that a plaintiff is free to name all

43

members of an association-in-fact enterprise as individual
defendants.")

In the instant case, plaintiff identifies Ocwen as "an
'enterprise' within the meaning of 18 U.S.C. § 1961(4)."  (SAC ¶
138.)  However, plaintiff fails to plead sufficient facts to
identify an enterprise distinct from Ocwen in its role as
defendant.  Plaintiff asserts that "Ocwen has conducted a
mortgage foreclosure enterprise in which the other defendants
cooperate and assist in Ocwen's plan to generate unlawful fees
and charges and to foreclose on properties where the owners have
substantial equity, through fraudulent billings and charges and
other fraudulent conduct."  (Pls.' Opp. at 18.)  While this
theory, if supported by factual allegations, might be sufficient
to plausibly allege the existence of a RICO enterprise, plaintiff
fails to plead any allegations of mail fraud or wire fraud, with
the particularity required under Rule 9(b), against any defendant
other than Ocwen.  Hence, despite her conclusory assertion that
the "enterprise thus consists of an association between Ocwen,
MERS, HSBC, Cal-Western Reconveyance, the trustee and York, at
the very least," (Id.), plaintiff does not support her theory
with factual allegations sufficient to state a claim for which
relief can be granted.  See Sever, 978 F.2d at 1534.

Accordingly, defendants' motion to dismiss plaintiffs'
twelfth claim for relief is GRANTED with leave to amend.

**K.    Intentional Inference with Contractual Relations**

In her thirteenth claim, plaintiff alleges that Ocwen
intentionally interfered with plaintiff's contractual relations
with Fidelity and/or HSBC.  (SAC ¶ 147-52.)

44

1    California courts have long held "that a stranger to a
2 contract may be liable in tort for intentionally interfering with
3 the performance of a contract." Pac. Gas & Elec. Co. v. Bear
4 Stearns & Co., 50 Cal. 3d 1118, 1126 (1990). "The elements which
5 a plaintiff must plead to state the cause of action for
6 intentional interference with contractual relations are (1) a
7 valid contract between plaintiff and a third party;
8 (2) defendant's knowledge of this contract; (3) defendant's
9 intentional acts designed to induce a breach or disruption of the
10 contractual relationship; (4) actual breach or disruption of the
11 contractual relationship; and (5) resulting damage." Id.

12    Although interference with contractual relations is an
13 intentional tort, "it does not require that the defendant act
14 with specific intent to interfere." Davis v. Nadrich, 174 Cal.
15 App. 4th 1, 10 (2009). Thus, a plaintiff may bring a claim where
16 the defendant "does not act for the purpose of interfering with
17 the contract or desire it but knows that the interference is
18 certain or substantially certain to occur as a result of his
19 action." Quelimane Co. v. Stewart Title Guar. Co., 19 Cal. 4th
20 26, 56 (1998) (quoting Rest. 2d Torts § 766, com. j, p.12).

21    Here, defendants argue that plaintiff fails to allege that
22 Ocwen had any intent to induce a breach of contract or that HSBC
23 and/or Fidelity breached any contract. (Defs.' Mem. at 16-17.)
24 Defendants argue that plaintiff must allege facts demonstrating
25 that Ocwen "acted with the purpose or design to cause the breach"
26 in order to meet the intentional act requirement. (Id. at 17.)

27    However, contrary to defendants' assertions, plaintiff may
28 sufficiently state a claim if she alleges that contractual

interference was "incidental" to an "independent purpose" of
Ocwen but known to Ocwen "to be a necessary consequence" of its
actions.  <u>Quelimane</u>, 19 Cal. 4th at 56 (quoting Rest. 2d Torts §
766, com. j, p.12).  Under the liberal notice pleading standards
of Rule 8(a), plaintiff satisfies this burden.  Plaintiff alleges
that if she breached the terms of her agreements with Fidelity
and/or HSBC, Ocwen induced the breach by, *inter alia*, failing to
credit payments as contractually required, charging fees that
exceeded contractually specified amounts, and by instructing
plaintiff to make payments on terms that failed to prevent the
foreclosure sale of her home.  (SAC ¶ 150.)  Thus, plaintiff
sufficiently states a claim for interference with contractual
relations.

Accordingly, defendants' motion to dismiss plaintiff's
thirteenth claim for relief is DENIED.

### L.   Negligent Interference with Contractual Relations

In her fourteenth claim for relief, plaintiff asserts a
claim for "negligent interference with contractual relations."
(SAC ¶¶ 153-55.)  However, California law does not recognize a
cause of action for negligent interference with contractual
relations, <u>Davis</u>, 174 Cal. App. 4th at 9, as plaintiff herself
acknowledges in her opposition to defendants' motion to dismiss.
(Pls.' Opp. at 19).

Accordingly, defendants' motion to dismiss plaintiff's
fourteenth claim for relief is GRANTED without leave to amend.

## II.  Motion to Strike

Defendants also move pursuant to Federal Rule of Civil
Procedure 12(f) to strike plaintiff's claims for quiet title,

1   breach of third party beneficiary obligations, intentional
2   interference with contractual relations, and negligent
3   interference with contractual relations.  (Mot. to Strike, filed
4   June 4, 2010, at 2.)  In addition, defendants move to strike
5   plaintiff's prayer for punitive damages in connection with her
6   fraud claim.  (<u>Id.</u>)

7        **A.   Claims**

8        Defendants argue that plaintiff failed to comply with the
9   requirements of Rule 15(a)(2) by not securing leave from the
10  court before amending her quiet title claim to add HSBC as a
11  defendant and adding her claims for breach of third party
12  beneficiary obligations and intentional and negligent
13  interference with contractual relations.  (<u>Id.</u>)

14       While as a technical matter defendants are correct that
15  plaintiff's amendments were not contemplated within the leave to
16  amend granted by the court's prior Order, a "court should freely
17  give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).
18  Consequently, the court construes plaintiff's opposition to
19  defendants' motion to strike as a motion for leave to amend and
20  grants the motion.

21       **B.   Punitive Damages**

22       Finally, defendants assert that the SAC fails to plead
23  sufficient facts to warrant the award of punitive damages.  (Mot.
24  to Strike at 2.)  Under California Civil Code § 3294, punitive
25  damages are available where a plaintiff proves that a defendant
26  is guilty of fraud.  <u>See</u>, <u>e.g.</u>, <u>Scott v. Phoenix Schools, Inc.</u>,
27  175 Cal. App. 4th 702, 715-16 (2009) (explaining that "Punitive
28  damages are appropriate if the defendant's acts are

1  reprehensible, fraudulent or in blatant violation of law or
2  policy.") (quotation and citation omitted).

3      Here, as set forth *supra*, plaintiff sufficiently alleges a
4  claim for fraud.  Furthermore, plaintiff argues that defendants'
5  conduct constituted "an unlawful, deceptive, systematic and
6  continuous scheme and pattern of fraud, wrongful conduct and
7  abuse."  (SAC ¶ 21.)  Thus, plaintiff alleges acts by defendants
8  that are reprehensible, fraudulent, and in violation of law.
9  Hence, defendants' argument that plaintiff fails to plead
10  sufficient allegations to support punitive damages is without
11  merit.

12      Accordingly, defendants' motion to strike is DENIED.

13  **CONCLUSION**

14      For the foregoing reasons, defendants' motion to dismiss is
15  GRANTED in part and DENIED in part as follows:

16      (1)  Defendants' motion to dismiss plaintiffs' second claim
17          for relief for quiet title is DENIED.

18      (2)  Defendants' motion to dismiss plaintiffs' fourth claim
19          for relief for breach of contract is DENIED as to the
20          allegations concerning the deed of trust and GRANTED
21          with leave to amend as to all other alleged breaches of
22          contract.

23      (3)  Defendants' motion to dismiss plaintiffs' fifth claim
24          for relief for breach of third party beneficiary
25          obligations is DENIED.

26      (4)  Defendants' motion to dismiss plaintiffs' sixth claim
27          for relief for fraud is DENIED.

28  ///

(5) Defendants' motion to dismiss plaintiffs' seventh claim
for relief for violations of California's Unfair
Competition Law is DENIED as to defendant Ocwen and
GRANTED with leave to amend as to defendant HSBC.

(6) Defendants' motion to dismiss plaintiffs' eighth claim
for relief for violations of California's RFDCPA is
DENIED as to the allegations that Ocwen represented
that plaintiff would be charged unlawful fees, and
GRANTED with leave to amend as to all other
allegations.

(7) Defendants' motion to dismiss plaintiffs' ninth claim
for relief for unjust enrichment is DENIED.

(8) Defendants' motion to dismiss plaintiffs' tenth claim
for relief for breach of fiduciary duty is GRANTED
without leave to amend.

(9) Defendants' motion to dismiss plaintiffs' eleventh
claim for relief for negligence is GRANTED without
leave to amend.

(10) Defendants' motion to dismiss plaintiffs' twelfth claim
for relief for violation of RICO is GRANTED with leave
to amend.

(11) Defendants' motion to dismiss plaintiffs' thirteenth
claim for relief for intentional interference with
contractual relations is DENIED.

(12) Defendants' motion to dismiss plaintiffs' fourteenth
claim for relief for negligent interference with
contractual relations is GRANTED without leave to
amend.

1   Defendants' motion to strike is DENIED.

2   Plaintiff is granted fifteen (15) days from the date of this

3   order to file a third amended complaint in accordance with this

4   order.  Defendants are granted thirty (30) days from the date of

5   service of plaintiff's third amended complaint to file a response

6   thereto.

7   IT IS SO ORDERED.

8   DATED: August 4, 2010

9   _____
                                FRANK C. DAMRELL, JR.
10                              UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28